BUMGARDNER, Judge.
Tavario Shamont Gates appeals his convictions of murder of James Dixon and malicious wounding of Thomas Redford. He contends that the trial court erred by denying his motion to suppress statements he made to the police. We find that the police were not interrogating the defendant when he made the statements. Accordingly, we affirm the convictions.
The victim died of multiple gunshot wounds inflicted while he sat in his car on April 27, 1997. Redford, who sat in the front passenger seat, was also shot. Four months after the shooting, the police arrested the defendant on an unrelated charge. He initially waived his Miranda rights and talked to the police, but then he asked for an attorney, and the questioning ceased. During the interview, the defendant mentioned that he had heard about the James Dixon murder but denied any involvement in it.
Five days later, the police charged the defendant with the instant offenses and obtained arrest warrants. Two detectives brought the defendant to a police interview room to execute the new warrants. They did not advise the defendant of his Miranda rights because they were only planning to serve the warrants and were not planning to interrogate him. The usual police practice was to serve murder warrants in an interview room to keep the accused out of the public eye and away from distractions.
Once in the room, one of the detectives told the defendant that he was under arrest for the murder of James Dixon, and he began reading the warrant to the defendant. As he read, the defendant became angry and upset, interrupted the detective, and said, “look, if y’all want to know the truth, I am going to tell you the truth.” The detective started taking notes as the defendant continued to talk about the murder. In the statements he made, the defendant admitted that he was at the scene of the shooting, but he denied shooting either victim. Neither detective asked the defendant to make a statement, *355 asked him any questions, or made any comment about the evidence against him.
If the detectives interrogated the defendant, any statements to them would be suppressed because they did not advise him of his rights under Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Interrogation includes when “a person in custody is subjected to either express questioning or its functional equivalent.” Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
The trial court specifically found that the detectives did not question the defendant.[1] The evidence of the Commonwealth supports this finding. The defendant’s testimony to the contrary does not dispel the finding. The credibility of the witnesses and the weight to be accorded their testimony are matters solely for the fact finder. See Bridgeman v. Commonwealth, 3 Va.App. 523, 528, 351 S.E.2d 598, 601 (1986). The police did not interrogate the defendant by subjecting him to express questioning.
Though they asked no express questions, the statements must be suppressed if the detectives’ conduct was the functional equivalent of questioning. The United States Supreme Court defined “functional equivalent” as “any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from a suspect.” Innis, 446 U.S. at 301, 100 S.Ct. 1682. The test is “ “whether an objective observer would view an officer’s words *356 or actions as designed to elicit an incriminating response.’ ” Timbers v. Commonwealth, 28 Va.App. 187, 196, 503 S.E.2d 233, 238 (1998) (quoting Blain v. Commonwealth, 7 Va.App. 10, 15, 371 S.E.2d 838, 841 (1988)). If a statement is “not foreseeable, then it is volunteered.” Blain, 7 Va.App. at 15, 371 S.E.2d at 841.
We conclude that there was no functional equivalent of questioning. The detective stated the charges and began reading the warrant. They were unprepared to record or memorialize any statements. They did not have a tape recorder, a video camera, or even a notepad. The detective, who made notes once the defendant began talking, had to write on paper he retrieved from the defendant’s file folder. Their actions were not “reasonably likely to elicit an incriminating response.” Innis, 446 U.S. at 301, 100 S.Ct. 1682.
The room where the detectives executed the warrants did not, by itself, constitute a functional equivalent of interrogation. It was common for detectives to serve warrants in an interview room. Even if it amounted to “subtle compulsion,” as the defendant argues, an interview room was not reasonably likely to elicit incriminating responses. Neither did it create a situation that the detectives should have known would produce incriminating responses. See id. at 303, 100 S.Ct. 1682.
No evidence suggests that the detectives anticipated the defendant would react by making statements. Their sole purpose was to execute the new warrants. Interrogation does not include “words or actions by the police which are normally attendant to arrest and custody.” Wright v. Commonwealth, 2 Va.App. 743, 746, 348 S.E.2d 9, 12 (1986). Accord Pennsylvania v. Muniz, 496 U.S. 582, 603-04, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990); King v. Commonwealth, 243 Va. 353, 360, 416 S.E.2d 669, 672-73 (1992) (when law enforcement’s stated purpose of encounter with defendant is entirely legitimate, to obtain forensic samples, and they did not deviate from that purpose, there was no “interrogation” (citing Miranda and *357 Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981))).
The detectives did not interrogate the defendant either by asking express questions or by actions that were the functional equivalent to express questions. When the defendant volunteered statements to them, they were not required to ignore what they were hearing. See Jenkins v. Commonwealth, 244 Va. 445, 453, 423 S.E.2d 360, 365 (1992). The trial court did not err when it denied the motion to suppress the statements. Accordingly, we affirm the convictions.

Affirmed.

. In denying the motion to suppress, the trial court stated:
[T]he Court doesn’t have any problem with the case. The Court doesn't believe the police officers or the detectives asked any questions. It's not unusual to take them back in the interview room to serve them with warrants to keep them out of the public eye and for distraction. So, they took him back there, were reading warrants to him, and he started talking and the detectives listened to him a few minutes, took out his pad and wrote it down. To suppress this would be ridiculous. Here’s a free statement given by an individual without any interrogation. And to say that that would not be admissible is contrary to common sense.