COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Clements and Senior Judge Hodges
Argued at Chesapeake, Virginia


JERRY NORMAN
                                        MEMORANDUM OPINION[*] BY
v.    Record No. 2925-99-1              JUDGE WILLIAM H. HODGES
                                          NOVEMBER 14, 2000
COMMONWEALTH OF VIRGINIA


       FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                  Edward W. Hanson, Jr., Judge

            William P. Robinson, Jr. (Robinson and
            Anderson, on brief), for appellant.

            Eugene Murphy, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Jerry Norman (appellant) appeals from a judgment of the

Circuit Court for the City of Virginia Beach (trial court)

convicting him of first degree murder, conspiracy, robbery, and

using a firearm in the commission of a felony.  He contends the

trial court erred by 1) refusing to suppress his confession to the

police;[1] 2) trying him jointly with four codefendants; and 3)

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] In the petition for appeal, appellant framed this question
presented as a Fourth Amendment challenge to his arrest, but his
argument consisted solely of a Fifth Amendment challenge to the
admissibility of his confession.  Although the order granting
the appeal framed the question presented as drafted by appellant
in the petition, we address the question as argued by appellant,
that is, the Fifth Amendment issue.  See Cruz v. Commonwealth,
12 Va. App. 661, 664 n.1, 406 S.E.2d 406, 407 n.1 (1991) (only

admitting into evidence against him the extra-judicial statements of his non-testifying codefendants.  For the following reasons, we affirm the judgment of the trial court.

I.

Around 2:30 a.m. on July 25, 1997, Tara Harper heard what sounded like a knock at the front door of her townhouse.  When Harper's friend, William McKleny, went downstairs to investigate, he was fatally shot in the back of the head by an intruder.

Over the next several days, the police developed appellant, Toney Griffin, Armard Smith, Santo Langley, and Terrence Woolard as suspects.  All five codefendants eventually made statements to the police.

In his statement, appellant admitted being with his codefendants at a convenience store near Harper's Northridge neighborhood on the night of McKleny's death.  Appellant was riding with Griffin, who was driving appellant's car.  Woolard, Smith, and Langley were in Woolard's car.  Appellant asserted that Smith started talking about breaking into the Northridge residence of "Big Mike," a purported drug dealer, and stealing money.  Appellant admitted that on the way to Northridge, he told Griffin about a ski mask in the trunk of his car.  Griffin

---

questions presented in the petition for appeal and granted by the Court will be addressed on appeal).

stopped the car and retrieved the mask in order to use it during the upcoming burglary.

Appellant said the codefendants parked their cars in Northridge and made their way to Harper's townhouse, which they believed was Big Mike's residence.[2] Griffin and Smith pried open Harper's back door with a screwdriver while appellant kept watch to make sure that none of the townhouse's occupants came downstairs. Appellant initially claimed that he never entered the residence, that he remained back by the rear fence when Smith and Griffin entered the house, and that he did not hear a gunshot. When confronted with evidence that his shoe print was found in Harper's kitchen, appellant admitted that he had entered the house, but asserted he was not present when McKleny was killed. Ultimately, appellant admitted that he entered the house armed with a nine millimeter pistol and that he was present when Griffin shot McKleny.

When appellant agreed to talk to Detective Byrum following his arrest, he also led the police to the location of a .38 caliber revolver that was hidden under a piece of fencing in Northridge. Appellant claimed the gun was Griffin's and that Griffin hid the gun under the fence after the shooting, before joining the other codefendants at Woolard's car.

---

[2] Harper testified that she had been renting the townhouse from Micah Jordan for nearly three months.

-

At trial, appellant conceded that his shoe print was on Harper's kitchen floor.

Griffin initially denied any knowledge of the crimes. Gradually, however, Griffin admitted his involvement to Byrum and Detective Orr.  He claimed that appellant targeted the house and provided him with a handgun.  Griffin admitted forcing open the door with a screwdriver and stated that appellant watched the inside of the house through the window to make sure no one caught them breaking in.  During his first interview, Griffin asserted he left the house after discovering one of Harper's children sleeping upstairs.  And he said he did not know who shot the victim.  At a second interview, however, Griffin told the officers:  "It was an accident.  I never meant for it to happen."  He also stated "I didn't mean to pull the trigger." At no point did Griffin accuse appellant of shooting McKleny.

Like Griffin, Smith initially denied any involvement in the crimes and claimed he had an alibi.  In gradually admitting his involvement, Smith stated that Griffin was armed with a revolver and appellant had an automatic pistol.  Smith indicated that the idea of breaking into Harper's residence originated with Langley.  Smith stated that he, Griffin and appellant entered the house and he identified Griffin as the shooter.  According to Smith, Griffin claimed that he shot McKleny because McKleny reached for him.

-

Woolard told the detectives that appellant and Griffin had handguns and that appellant's gun was a semi-automatic. At trial, Woolard denied knowing that appellant or Griffin were armed. He continually denied any knowledge of his codefendants' intentions and asserted he was not present when the shooting took place.

Langley initially denied any involvement in the crimes. He ultimately admitted that, after a discussion with the other codefendants about committing a burglary, he agreed to knock on Harper's front door. He heard the gunshot, but never actually entered the house. At trial, Langley recanted his confession and asserted that he was not aware of the intentions of his codefendants.

The five codefendants were jointly tried before a jury and their confessions were admitted into evidence. The jury convicted the five men of conspiracy, burglary, and first degree murder. The jury also convicted appellant and Griffin of using a firearm in the commission of murder. Neither appellant, Griffin, nor Smith testified at trial.

## II.

Appellant contends his confession was obtained in contravention of his rights under the Fifth Amendment and the Supreme Court's decision in Edwards v. Arizona, 451 U.S. 477 (1981).

-

On an appeal from a trial court's ruling on a motion to suppress

> [w]e view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. We review the trial court's findings of historical fact only for "clear error,"[3] but we review de novo the trial court's application of defined legal standards to the particular facts of a case.

Harris v. Commonwealth, 27 Va. App. 554, 561, 500 S.E.2d 257, 260 (1998) (footnote added).

After Byrum and Orr encountered appellant and Griffin in Northridge the morning after McKleny's murder, appellant voluntarily accompanied the detectives to the police station. There the detectives questioned appellant regarding the burglary and murder. Although Byrum told appellant he was not under arrest and free to leave, when appellant later stated that he wanted to leave, Byrum informed him that he was being detained. Appellant told Orr "that he may need a lawyer."

The detectives eventually released appellant (after Orr seized appellant's shoes as evidence), but within an hour the police took appellant into custody again. Byrum informed

---

[3] "'Clear error' is a term of art derived from Rule 52(a) of the Federal Rules of Civil Procedure, and applies when reviewing questions of fact" in the federal system. Ornelas v. United States, 517 U.S. 690, 694 n.3 (1996). In Virginia, questions of fact are binding on appeal unless "plainly wrong." Quantum Dev. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991); Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 542 (1986).

-

appellant that he was under arrest and read appellant his Miranda rights. Appellant invoked his right to remain silent, and Byrum did not question him further.

Approximately two hours later, Byrum went to see appellant for the purpose of completing a tracer sheet. Byrum only asked for appellant's name, date of birth, and other personal identification information, and did not question appellant regarding the burglary/homicide. When Byrum told appellant he was being charged with murder, appellant stated "[n]o, no, watch me. I'm getting ready to turn into a pussy. They're not going to pin this on me." Byrum re-Mirandized appellant and appellant indicated that he wanted to make a statement.

Appellant testified that approximately two hours after he was arrested, Byrum came into the interview room and said "Didn't I tell you I was going to get you for murder." Appellant claimed that Byrum then began relating to him statements that Griffin was allegedly making, implicating appellant as McKleny's killer. Appellant testified he again asked for a lawyer, but was told that no lawyers were available.

In denying appellant's motion to suppress his confession, the trial court found that appellant re-initiated contact with the police.

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. A

-

defendant's Fifth Amendment rights include both the right to remain silent and the right to have an attorney present when questioned by law enforcement officers.  See Miranda v. Arizona, 384 U.S. 436 (1966).  A defendant's custodial confession may not be admitted against him at trial unless he was advised of his Miranda rights and he knowingly and voluntarily waived those rights before speaking to law enforcement officers.  Id. at 444.

A defendant who has "expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85.  "Only if the accused initiates further 'communication, exchanges, or conversations with the police,' and only if those communications result in the accused changing his or her mind and freely and voluntarily waiving the right to counsel, may the police resume interrogation without violating the Edwards rule."  Giles v. Commonwealth, 28 Va. App. 527, 532, 507 S.E.2d 102, 105 (1998) (citation omitted).

Interrogation includes "'not only . . . express questioning, but also . . . any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"  Hines v. Commonwealth, 19 Va. App. 218, 222, 450 S.E.2d 403, 404 (1994)

-

(quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)).
"Edwards does not prohibit routine communications between the
police and the accused." Giles, 28 Va. App. at 533, 507 S.E.2d
at 106; see Gates v. Commonwealth, 30 Va. App. 352, 356, 516
S.E.2d 731, 733 (1999) (holding that reading an arrest warrant
to the defendant did not constitute the "functional equivalent
of questioning").

Even if a defendant initiates further contact with the
police, the trial court may only admit the statement if it
determines that he knowingly and intelligently waived his
previously invoked rights. Quinn v. Commonwealth, 25 Va. App.
702, 712, 492 S.E.2d 470, 475 (1997); see Smith v. Illinois, 469
U.S. 91, 96 (1984). Whether the defendant knowingly and
intelligently waived his rights "depends 'upon the particular
facts and circumstances surrounding that case, including the
background, experience, and conduct of the accused.'" Eaton v.
Commonwealth, 240 Va. 236, 250-51, 397 S.E.2d 385, 394 (1990)
(citation omitted).

The record reflects that appellant initiated a dialogue
with Byrum after being read the arrest warrants. Byrum's
actions did not constitute the functional equivalent of
questioning. See Gates, 30 Va. App. at 356, 516 S.E.2d at 733.
And the trial court was not required to believe appellant's
testimony that Byrum goaded him into confessing. The evidence
also sufficiently established that appellant waived his Miranda

-

rights knowingly and voluntarily. The trial court did not err, therefore, when it denied appellant's motion to suppress.[4]

### III.

Appellant contends the trial court erred when it ordered that he be tried jointly with his codefendants.

> On motion of the Commonwealth, for good cause shown, the court shall order persons charged with participating in contemporaneous and related acts or occurrences or in a series of acts or occurrences constituting an offense or offenses to be tried jointly unless such joint trial would constitute prejudice to a defendant. If the court finds that a joint trial would constitute prejudice to a defendant, the court shall order severance as to that defendant or provide such other relief justice requires.

Code § 19.2-262.1.

"In determining whether a joint trial would prejudice a defendant, the trial court should require '[t]he party moving for severance [to] establish that <u>actual prejudice</u> would result

---

[4] In denying the motion to suppress, the trial court made no express finding that appellant invoked his right to counsel, see <u>Midkiff v. Commonwealth</u>, 250 Va. 262, 462 S.E.2d 112 (1995), or whether a sufficient period of time elapsed for him to contact a lawyer from the time of his initial release until he was taken back into custody, see <u>Tipton v. Commonwealth</u>, 18 Va. App. 832, 447 S.E.2d 539 (1994). For the purposes of this opinion, we assume without deciding that appellant did invoke his right to counsel and that his period of freedom was insufficient to vitiate his rights under <u>Edwards</u>.

Although appellant did not raise the issue at trial, the evidence also established that the police "scrupulously honored" his post-arrest invocation of his right to remain silent. See <u>Riddick v. Commonwealth</u>, 22 Va. App. 136, 145, 468 S.E.2d 135, 139 (1996).

-

from a joint trial.'" Goodson v. Commonwealth, 22 Va. App. 61,

71, 467 S.E.2d 848, 853 (1996) (citation omitted).

> Actual prejudice results only when "there is
> a serious risk that a joint trial would
> compromise a specific trial right of
> [defendant], or prevent the jury from making
> a reliable judgment about guilt or
> innocence."
>
> [P]rejudice may result when evidence
> inadmissible against a defendant, if tried
> alone, is admitted against a codefendant in
> a joint trial.

Adkins v. Commonwealth, 24 Va. App. 159, 163, 480 S.E.2d 777,

779 (1997).

Appellant asserts he was prejudiced because the joint trial

permitted the Commonwealth to introduce into evidence the

extra-judicial statements of codefendants Griffin and Smith.  He

contends the admission of these extra-judicial confessions

violated his rights under the Confrontation Clause of the Sixth

Amendment.[5]  Because the underlying basis for these two questions

presented is identical, we address the issues in tandem.

"In all criminal prosecutions, state as well as federal,

the accused has a right, guaranteed by the Sixth and Fourteenth

Amendments to the United States Constitution, 'to be confronted

with the witnesses against him.'"  Lilly v. Virginia, 527 U.S.

116, 123 (1999).  "The central concern of the Confrontation

---

[5] Woolard and Langley testified at trial and were subject to cross-examination, thus remedying any potential Confrontation Clause violation.

-

Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845 (1990). The right of cross-examination is an essential element of "the right of an accused in a criminal case to confront the witnesses against him." Lee v. Illinois, 476 U.S. 530, 539 (1986).

The admission of a non-testifying codefendant's custodial confession violates a defendant's rights under the Confrontation Clause unless the prosecution can otherwise establish the inherent reliability of the confession. Lilly, 527 U.S. at 137-38. For Sixth Amendment purposes, "[a]n accomplice's custodial confession that incriminates a codefendant is presumptively unreliable . . . ." Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000).

To be admissible, an accomplice's extra-judicial confession

> must be "supported by a 'showing of
> particularized guarantees of
> trustworthiness.'" The particularized
> guarantees of trustworthiness necessary to
> rebut the presumption of unreliability must
> "be drawn from the totality of circumstances
> that surround the making of the statement
> and that render the declarant particularly
> worthy of belief." Evidence admitted based
> upon the existence of particularized
> guarantees of trustworthiness must be so
> trustworthy that adversarial testing would
> add little to its reliability.

Id. at 383-84, 523 S.E.2d at 539 (citations omitted). Factors that a court may consider in determining the reliability of a

-

confession include 1) the accomplice's unawareness of the fact that he has been implicated in a crime by a codefendant; 2) the police's ignorance of the confessor's involvement in the crime confessed; and 3) "the exercise of any contemporaneous cross-examination by counsel or its equivalent." Id. at 384, 523 S.E.2d at 539.

None of the above factors apply in the present case. The police used statements made (or allegedly made) by codefendants to persuade each defendant to confess. While the police did not know the extent of each defendant's role in these crimes, they had reason to believe that each was involved to some extent. And none of the non-testifying defendants was ever subjected to cross-examination or its equivalent. Accordingly, on this basis, the Commonwealth failed to establish the reliability of the accomplices' confessions.

Our reliability analysis does not stop here, however. A codefendant's extra-judicial confession may be admitted if it is substantially identical to the defendant's confession, that is, if the two confessions interlock. See Lee, 476 U.S. at 545; Bass, 31 Va. App. at 384-85, 523 S.E.2d at 540. As long as the codefendant's confession is thoroughly substantiated by the defendant's own confession, then the requirements of the Sixth Amendment are satisfied. Id. at 385, 523 S.E.2d at 540. "[A]n accomplice's statement that does not 'interlock' with the defendant's statement may be admitted against the defendant if

-

the areas of disagreement are irrelevant or trivial." Id. If there is a disagreement regarding the degree of the defendant's role in a crime and the extent of his culpability, then "admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment." Lee, 476 U.S. at 545.

The material portions of Smith's confession were thoroughly substantiated by appellant's own confession. While Smith and appellant disagreed on who originated the idea to break into Big Mike's house, because Smith accused Langley, this discrepancy was immaterial. Accordingly, the interlocking nature of the confessions established the reliability of Smith's confession and the admission of that statement against appellant did not constitute a violation of his rights under the Confrontation Clause.

The same cannot be said of Griffin's confession. Griffin told Byrum and Orr that appellant originated the idea to target Big Mike's house and that appellant provided him with a firearm. Because this discrepancy pertained to appellant's level of participation in the conspiracy, we cannot conclude that this area of disagreement was "irrelevant or trivial." Bass, 31 Va. App. at 385, 523 S.E.2d at 540. The trial court erred, therefore, by admitting Griffin's confession into evidence against appellant.

-

Having concluded that admitting Griffin's confession into evidence violated appellant's Sixth Amendment right of confrontation, we must determine whether this error was nevertheless harmless. "Confrontation Clause error is a federal constitutional error subject to harmless error analysis." Id. at 387, 523 S.E.2d at 541. Such error is harmless if the reviewing court can conclude that the error was harmless beyond a reasonable doubt. Timbers v. Commonwealth, 28 Va. App. 187, 201, 503 S.E.2d 233, 239 (1998).

The federal constitutional harmless error

> standard requires a determination of "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.

Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (citations omitted).

Appellant confessed to participating in the planning of these crimes. After seeing Smith and Griffin force open the sliding glass door, he entered Harper's residence armed with a nine millimeter handgun. He stipulated that one of his shoe prints was discovered on Harper's floor and he led the police to the gun he claimed Griffin used to shoot McKleny. Griffin's

-

confession, as well as that of Smith, was merely cumulative and

proved nothing relevant to appellant's legal culpability that

was not proved by other evidence.[6]  Moreover, unlike Langley and

Woolard, appellant did not seek to recant any portion of his

confession at trial.  Upon review of the record, we cannot

conclude there is a reasonable possibility that the verdict

would have been different had appellant been tried separately

and the extra-judicial confession of Griffin been excluded.  Any

---

[6] A panel of this Court recently reversed Griffin's first degree murder conviction on the ground that the admission of Smith's confession was not harmless error.  While Griffin claimed to have shot McKleny accidentally, Smith's statement to the police belied this assertion.  The panel reasoned that Griffin's assertion that the killing was accidental was sufficient to raise a reasonable doubt as to whether he acted with premeditation.  See Griffin v. Commonwealth, Record No. 2819-98-1 (October 10, 2000).

The Commonwealth filed a petition for rehearing or rehearing en banc in Griffin.  As of the date of this opinion, that petition was still pending.

Whether Griffin shot McKleny accidentally is immaterial in determining if appellant suffered any prejudice.  Although the arrest warrant charged appellant with premeditated murder, the grand jury indictment merely charged him with committing first degree murder in violation of Code § 18.2-32.  And the jury was instructed on felony murder, not premeditated murder.

The definition of first degree murder under Code § 18.2-32 includes any killing, even if unintentional, that occurs during the commission of a burglary or attempted robbery.  Ball v. Commonwealth, 221 Va. 754, 757, 273 S.E.2d 790, 792 (1981).  If the Commonwealth proves that the killing occurred during one of the enumerated felonies, it need not prove premeditation.  See Akers v. Commonwealth, 216 Va. 40, 47, 216 S.E.2d 28, 33 (1975); Code § 18.2-33 (defining as second degree murder any unintentional killing occurring during the commission of any felonious act other than those enumerated in Code §§ 18.2-31 and 18.2-32).

-

error committed by the trial court, therefore, was harmless beyond a reasonable doubt.

For the foregoing reasons, the judgment of the trial court is affirmed.

<u>Affirmed.</u>