COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Humphreys and Senior Judge Hodges
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION[*] BY
v.   Record No. 2937-02-2           JUDGE ROBERT J. HUMPHREYS
                                          MAY 6, 2003
LAJUAN JOSEA DAVIS


            FROM THE CIRCUIT COURT OF WESTMORELAND COUNTY
                   James E. Kulp, Judge Designate

             Kathleen B. Martin, Assistant Attorney
             General (Jerry W. Kilgore, Attorney General,
             on brief), for appellant.

             Charles J. Kerns, Jr. (James C. Breeden;
             McKerns & Hill; Hubbard, Breeden & Terry, on
             brief), for appellee.


     The Commonwealth of Virginia appeals a decision of the

trial court granting LaJuan Josea Davis' motion to suppress

evidence pertaining to his indictment for murder.  The

Commonwealth contends the trial court erred in finding that the

statement Davis provided to police was obtained in violation of

Davis' Miranda[1] rights.  For the reasons that follow, we affirm

the decision of the trial court.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.  Further, because this opinion has
no precedential value, we recite only those facts essential to
our holding.

     [1] Miranda v. Arizona, 384 U.S. 436 (1966).

In reviewing the ruling of a trial court on a motion to suppress, we "consider the evidence in the light most favorable to the prevailing party below." Commonwealth v. Rice, 28 Va. App. 374, 377, 504 S.E.2d 877, 878 (1998).

On December 1, 2000, Davis was arrested in Baltimore, Maryland, for a murder committed several months earlier in Maryland. Davis was brought to the homicide unit at the Baltimore police headquarters. Once at police headquarters, at about 11:00 or 11:30 a.m., Davis was interviewed by Detective Dennis Raftery of the Baltimore Police Department. Detective Raftery told Davis that he wanted to talk only about the Maryland offense. Detective Raftery then read Davis his Miranda rights. Davis asserted his right to counsel at that time, and Raftery ended the interview.

Because Detective Raftery knew that Davis was also suspected of having committed a murder in Westmoreland County, Virginia, Raftery had already contacted Officer Bill England of the Westmoreland County Sheriff's Department to notify England of Davis' arrest. Officer England, who had been attempting to locate Davis for "six" months, traveled immediately to Baltimore. He arrived at Baltimore police headquarters approximately three and one-half hours after Detective Raftery had ended his interview with Davis.

When Officer England arrived, Davis was still in the interrogation room. Detective Raftery told Officer England that Davis had asserted his right to counsel concerning the Maryland offense. Officer England then entered the interrogation room with Davis. England introduced himself to Davis and advised Davis of the pending Virginia charges. England told Davis that a co-suspect in the Virginia murder, Dion Carter, had made statements implicating Davis as the actual perpetrator of the murder. Specifically, England told Davis that Carter said it was Davis' idea to kill the victim, after having robbed him and taken his wallet, and that Davis then took the victim "out to the tree line or wood line and shot him."[2] England also told Davis that Carter "was willing to give [police] the shotgun and the wallet and that for further consideration he was willing to testify against [Davis]."

Davis had remained silent until Officer England told him the statements allegedly made by Carter. At that point, Davis "put his hands on his face and he literally put his face into his lap and he came back up and he started to tear up and he said, I cannot believe [Carter] said that about me. That is not what happened. But I will tell you what happened." Officer England then told Davis that he "had to get some stuff" but "would be back in a little bit."

_____

[2] Officer England had not actually received this information

- 3 -

After speaking with "two assistant state attorneys from the City of Baltimore" and the Commonwealth's Attorney for Westmoreland County about "what [he] should do," Officer England returned to the interrogation room to interview Davis. England asked Davis if he was still willing to cooperate, and Davis said "Yes." Officer England then advised Davis of his Miranda rights and had Davis execute a written waiver. At that time, Davis gave the statement suppressed by the trial court.

Prior to his trial in circuit court on the Virginia murder charge, Davis raised a motion to suppress the statement he gave to Officer England. Davis contended the statement was elicited in violation of the "5th and 14th Amendments to the U.S. Constitutions [sic], comparable provisions of the Virginia Constitution, and the case of Edwards v. Arizona, 451 U.S. 477 (1981), and its progeny."

During the hearing on the motion, Officer England testified that he was an experienced police officer, that he had twenty years of experience in conducting criminal investigations, and that he had interviewed "numerous" criminal suspects. He acknowledged that, based upon his prior training and experience, he was aware that "telling a suspect that a co-defendant or a co-suspect has flipped on him or implicated him" is an "effective technique" for encouraging a suspect to cooperate

from Carter, but had learned it from Carter's aunt.

- 4 -

with authorities and provide a statement.  Indeed, he agreed that the use of this particular technique was "reasonably likely to elicit a response" from a suspect.  However, Officer England testified that when he talked to Davis about the charges he "was not in that frame of mind," but was merely "blow[ing] off some steam" in relief that Davis had finally been apprehended.  He stated that he was "caught" "off guard" when Davis responded to his comments.

Davis also testified during the suppression hearing.  He testified that he told Officer Raftery he did not want to see the Virginia officers.  He stated that when Officer England entered the interview room, he told England he did not want to speak to him and that he had requested a lawyer.  Davis claimed England, nevertheless, continued talking to him, telling him that he was in "trouble," and mentioning the death penalty "a few" times.  Davis further testified that he finally decided to talk to Officer England because he was "scared," "tired," and "worn down."

At the close of the evidence, Davis argued his statement should be suppressed because Officer England had violated the rule set forth in Edwards.  He contended Officer England knew he had invoked his right to counsel, that he had not initiated the discussion with England, and that England's discussion with him was the functional equivalent of an interrogation.

In response, the Commonwealth argued that Davis had not asserted his right to counsel for the Virginia offense, but only for the Maryland offense.  The Commonwealth further argued that, after a break in the discussion (the 30-45 minutes during which Officer England left the interrogation room), Davis initiated the discussion about the Virginia charges, thereby knowingly and intelligently waiving his right to counsel.  Thus, the Commonwealth contended there was no violation of Davis' Miranda rights.

The trial court granted Davis' motion to suppress, finding:

> the defendant was arrested in Maryland on December 1st, 2000.  He was advised by Detective Raftery of his Miranda rights and the defendant orally invoked his right to counsel.  The defendant was told that the Virginia authorities were coming but there never was a request by the defendant to see or speak to the Virginia authorities.
>
> When the Virginia authorities arrived in Maryland they were told that the defendant, after having been advised of his Miranda rights, had invoked his right to counsel. From the time of the defendant's arrest until [Officer England] spoke to him, the defendant was continuously in custody and no attorney was ever present during the events in question.  The issue in this motion raises the question about a Fifth Amendment right to counsel and not a Sixth Amendment right to counsel.
>
> In Edwards [v.] Arizona, and its progeny, once the defendant invokes his Miranda right to counsel all police initiated interrogation regarding any criminal investigation must cease unless the defendant's counsel is present at the time

of the questioning.

     *     *     *     *     *     *     *

An exception to the Edwards rule is where
the defendant initiates a conversation with
the authorities.  The evidence before the
Court shows that . . . defendant neither
asked or sought in any way to speak with the
Virginia authorities.  If the Court accepts
[Officer England's] testimony that he had no
expectation or desire to interrogate the
defendant but just wanted to see the person
that he had been pursuing for six months,
the Court must still examine whether
[Officer England's] actions in telling the
defendant what his co-defendant Carter had
said was a functional equivalent of
interrogation.

     *     *     *     *     *     *     *

In this case, [Officer England] testified
that he had been trained in interrogation
techniques and that one of the ways to
usually obtain a response is to tell his
suspect that his co-defendant has made a
statement casting the blame on the suspect.
[Officer England] testified that he in fact
told the defendant that his co-defendant,
who is Dion Clark [sic], had given a
statement inculpating the defendant.  The
Court finds that [Officer] England's actions
were the functional equivalent to
interrogation and, consequently, was an
interrogation initiated by the authorities
and not by the defendant.


                          II.

     On appeal, the Commonwealth contends only that the trial

court erred in finding Officer England's conduct was the

functional equivalent of interrogation and that Davis' statement

- 7 -

was, therefore, obtained in violation of his <u>Miranda</u> rights. We disagree.

The Commonwealth has the burden to show that the trial court's decision was erroneous upon an appeal from an order granting a defendant's motion to suppress. See <u>Stanley v. Commonwealth</u>, 16 Va. App. 873, 874, 433 S.E.2d 512, 513 (1993). We review the trial court's findings of historical fact only for "clear error," but we review <u>de</u> <u>novo</u> the trial court's application of defined legal standards to the particular facts of a case. See <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996). "Whether a defendant 'invoked' his <u>Miranda</u> right to counsel during custodial interrogation and whether he 'waived' this right, are determined by applying judicially declared standards." <u>Quinn v. Commonwealth</u>, 25 Va. App. 702, 713, 492 S.E.2d 470, 474-75 (1997) (citing <u>Davis v. United States</u>, 512 U.S. 452, 457 (1994) (noting the standard for invocation); <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986) (noting the standard for waiver)).

> Included among the safeguards established in <u>Miranda</u> is the right of a suspect to have counsel present at any custodial interrogation and to terminate the interrogation by invoking this right. <u>See</u> <u>Edwards v. Arizona</u>, [451 U.S. at 485-86]; <u>Miranda</u>, [384 U.S. at 469, 475]; <u>see</u> <u>also</u> <u>Correll v. Commonwealth</u>, 232 Va. 454, 462, 352 S.E.2d 352, 356 (1987); <u>Foster v. Commonwealth</u>, 8 Va. App. 167, 173, 380 S.E.2d 12, 15 (1989). . . . If [an]

interrogation continues <u>without</u> the presence of an attorney, the defendant's statement is inadmissible unless the Commonwealth proves by a preponderance of the evidence that the defendant voluntarily, knowingly, and intelligently waived his right to retained or appointed counsel. <u>See</u> <u>Edwards</u>, [451 U.S. at 482]; <u>Miranda</u>, [384 U.S. at 475]. <u>See also</u> <u>Colorado v. Connelly</u>, [479 U.S. 157, 168] (1986); <u>Mills v. Commonwealth</u>, 14 Va. App. 459, 468, 418 S.E.2d 718, 722-23 (1992).

In order to "prevent police from badgering a defendant into waiving his previously asserted <u>Miranda</u> rights" and to "protect the suspect's 'desire to deal with the police only through counsel,'" the United States Supreme Court established the "<u>Edwards</u> rule" as a "second layer of prophylaxis for the <u>Miranda</u> right to counsel." <u>See</u> <u>Davis</u>, [512 U.S. at 458]; <u>McNeil v. Wisconsin</u>, [501 U.S. 171, 176, 178] (1991); <u>Michigan v. Harvey</u>, [494 U.S. 344, 350] (1990). Pursuant to <u>Edwards</u> and its progeny, once the defendant invokes his <u>Miranda</u> right to counsel, <u>all</u> police-initiated interrogation regarding <u>any</u> criminal investigation must cease unless the defendant's counsel is present at the time of questioning. <u>See</u> <u>Minnick v. Mississippi</u>, [498 U.S. 146, 153] (1990); <u>Arizona v. Roberson</u>, [486 U.S. 675, 683] (1988); <u>Edwards</u>, [451 U.S. at 484-85]; <u>see also</u> <u>Jackson v. Commonwealth</u>, 14 Va. App. 414, 416, 417 S.E.2d 5, 6-7 (1992). If the police initiate interrogation of a defendant after he has invoked his <u>Miranda</u> right to counsel and before his counsel is present, "a valid waiver of this right cannot be established . . . even if he has been advised of his rights." <u>Edwards</u>, [451 U.S. at 484]; <u>see</u> <u>Eaton v. Commonwealth</u>, 240 Va. 236, 252, 397 S.E.2d 385, 395 (1990); <u>Hines v. Commonwealth</u>, 19 Va. App. 218, 221, 450 S.E.2d 403, 404 (1994). However, the <u>Edwards</u> rule only applies to periods of continuous custody, and, if the defendant is released from custody following the

invocation of his Miranda right to counsel,
the Edwards rule does not bar subsequent
police-initiated interrogation.  See Tipton
v. Commonwealth, 18 Va. App. 832, 834, 447
S.E.2d 539, 540 (1994).

Whether the Edwards rule renders a statement
inadmissible is determined by a three-part
inquiry.  Cf. Smith v. Illinois, [469 U.S.
91, 95] (1984).  First, the trial court
"must determine whether the accused actually
invoked his right to counsel" and whether
the defendant remained in continuous custody
from the time he or she invoked this right
to the time of the statement.  Id.; see
Tipton, 18 Va. App. at 834, 447 S.E.2d at
540.  Second, if the accused has invoked his
or her right to counsel and has remained in
continuous custody, the statement is
inadmissible unless the trial court finds
that the statement was made at a meeting
with the police that was initiated by the
defendant or attended by his lawyer.  See
Smith, [469 U.S. at 96] (stating that
statement is admissible if made at a
defendant-initiated meeting); Minnick, [498
U.S. at 153] (stating that police "may not
reinitiate interrogation without counsel
present").  Third, if the first two parts of
the inquiry are met, the trial court may
admit the statement if it determines that
the defendant thereafter "knowingly and
intelligently waived the right he had
invoked."  Smith, [469 U.S. at 96].

Quinn, 25 Va. App. at 710-12, 492 S.E.2d at 474-75.

Thus, these "'safeguards come into play whenever a person in
custody is subjected'" to an interrogation.  Jenkins v.
Commonwealth, 244 Va. 445, 453, 423 S.E.2d 360, 365 (1992)
(quoting Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980)).
"The term 'interrogation' means either express questioning or its
functional equivalent."  Watts v. Commonwealth, 38 Va. App. 206,

- 10 -

214, 562 S.E.2d 699, 703 (2002). "The 'functional equivalent' of an interrogation is 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" Id. (quoting Innis, 446 U.S. at 301). However, "[i]f a suspect's statement was not foreseeable, then it is volunteered," and such "'[v]olunteered statements . . . are not barred by the Fifth Amendment and their admissibility is not affected by [Miranda].'" Blain v. Commonwealth, 7 Va. App. 10, 15, 371 S.E.2d 838, 841 (1988) (quoting Miranda, 384 U.S. at 478) (alteration in original). Accordingly, we have interpreted the Innis standard "as requiring a determination whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response." Id.

Here, there is no dispute that Officer England did not engage in any express questioning of Davis. Rather, the issue is whether his discussion with Davis, concerning the statements allegedly made by Carter, amounted to a "functional equivalent" of an interrogation, or whether Davis' statement was "volunteered" and reflected his "knowing and intelligent" waiver of his right to counsel. We find that the trial court properly determined that Officer England's conduct was the functional equivalent of an interrogation and that, therefore, Davis' statement was not "volunteered."

Officer England acknowledged that he knew telling a suspect that someone, generally a co-suspect or codefendant, has

implicated him or her as the perpetrator of the crime is an "effective technique" "reasonably likely to elicit a response" from the suspect. Thus, as an experienced police officer, there can be no question that Officer England "should" have known that his actions were reasonably likely to elicit an incriminating response from Davis. Nor can there be any question that an objective observer would have viewed his conduct as "likely to elicit an incriminating response." Id. at 16, 371 S.E.2d at 841. Indeed, England's statements to Davis could hardly be equated to those made by police in the cases relied upon by the Commonwealth. See Innis, 446 U.S. at 303 (holding that a brief conversation between police officers which amounted to "no more than a few offhand remarks" about the missing weapon was not the functional equivalent of interrogation); Gates v. Commonwealth, 30 Va. App. 352, 356, 516 S.E.2d 731, 732 (1999) (holding that reading a warrant to a suspect in an interrogation room was not the functional equivalent of interrogation as the conduct amounted merely to "'words or actions by the police which are normally attendant to arrest and custody'" (quoting Wright v. Commonwealth, 2 Va. App. 743, 746, 348 S.E.2d 9, 12 (1986))); and Blain, 7 Va. App. at 16, 371 S.E.2d at 841-42 (holding that a conversation between police and the suspect was calculated specifically to produce physical evidence of the crime and was, therefore, not the functional equivalent of interrogation).

Moreover, the fact that England claimed he did not intend to elicit such a response is of no consequence. Neither the Innis standard, nor our interpretation of the standard as set forth in

<u>Blain</u>, requires a showing of subjective intent on the part of the officer. Indeed, the United States Supreme Court in <u>Innis</u> specifically fashioned the standard "upon the perceptions of the suspect, rather than the intent of the police," in order to reflect the notion that "<u>Miranda</u> safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police tactics, without regard to objective proof of the underlying intent of police." <u>Innis</u>, 446 U.S. at 302.

Accordingly, we find no error in the trial court's determination that Officer England's conduct amounted to the functional equivalent of an interrogation and that, therefore, Davis' statement was not volunteered. As the trial court made an express factual determination, not disputed on appeal, that Davis remained in custody at all times relevant, that he properly invoked his right to counsel, and that no counsel was present during the conversation at issue, we further find no error on the part of the trial court in granting Davis' motion to suppress his statement. Thus, we affirm the trial court's ruling.

<u>Affirmed.</u>