COURT OF APPEALS OF VIRGINIA

Present: Judges Willis, Annunziata and Overton
Argued at Richmond, Virginia


KELLY YVETTE TIMBERS
                                          OPINION BY
v.   Record No. 1702-97-2      JUDGE ROSEMARIE ANNUNZIATA
                                       AUGUST 18, 1998
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF MADISON COUNTY
                   Lloyd C. Sullenberger, Judge

          Diana H. Wheeler for appellant.

          Marla Graff Decker, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Kelly Yvette Timbers (appellant) was convicted of two counts
of forgery.  In this appeal, she challenges the trial court's
admission into evidence of statements she made to a deputy
sheriff while she was incarcerated in a Madison County holding
cell.  She contends the statements were obtained in violation of
Miranda v. Arizona, 384 U.S. 436 (1966), and that the statements
were the unlawful fruit of an earlier detention in violation of
the Fourth Amendment.  She also contends the evidence was
insufficient to support her convictions for forgery.  We hold
that law enforcement authorities violated appellant's Miranda
rights to obtain her statement, and we reverse her convictions
for forgery.

     On November 15, 1996, law enforcement authorities executed a
search warrant at an apartment complex in Madison County.  In
addition to searching appellant's apartment, law enforcement

authorities searched the apartment of John Johnson. Johnson owned a blue Lincoln Town Car which he sometimes loaned out in trade for crack cocaine. During the execution of the search warrant, an officer saw the blue Lincoln enter the area of the apartment building.

The Lincoln then left the area of the apartment building and drove away. An officer of the Virginia State Police stopped the Lincoln because he was instructed to do so by an undisclosed person on his radio. During a search of the Lincoln, law enforcement officers found a small packet of cocaine in the car, and a Madison County deputy arrested appellant, who was the driver, and the other occupant of the car.

At the sheriff's office, Deputy Robert MacFall asked appellant for identifying information, including her name, date of birth, and Social Security number. Appellant told MacFall that her name was Gwendolyn Ann Timbers. After appellant was fingerprinted, she signed the fingerprint card and a Central Criminal Records Exchange (CCRE) form with the name, "Gwendy Timbers." MacFall prepared and served appellant with a warrant for possession of cocaine.

Between a half-hour and an hour after appellant's booking, while appellant was in the holding cell at the sheriff's office, a woman came into the lobby of the sheriff's office and asked to give MacFall an item of clothing for Kelly Timbers. MacFall testified that, after this exchange, he immediately went "to the

-2-

holding cell where we had Ms. Timbers and questioned her as to what her real identity was."  When asked to specify his actions, MacFall testified as follows:  "I went to the holding cell door, I called her by the name of Kelly Timbers and she looked at me.  And I told her if she was Kelly Timbers, that she needed to come forth with that information."  MacFall testified that he did not directly ask appellant if her name was Kelly.

Appellant acknowledged that she was actually Kelly Timbers.  Appellant was not advised of her Miranda rights at any point prior to this acknowledgement.  The deputy charged appellant with one count of forgery for the fingerprint card, one count of forgery for the CCRE card, and one count of giving false information to a police officer, in addition to possession of cocaine.

Appellant moved to suppress the cocaine on the basis that no reasonable suspicion supported the stop of the Lincoln, and moved to suppress the fingerprint cards and the statement she made in the holding cell that she was in fact Kelly Timbers on the basis that these statements were fruits of the unlawful stop.  After a hearing, the trial court granted the motion to suppress the cocaine on the basis that no evidence established that the person who ordered the Lincoln stopped had reasonable suspicion to justify the stop.  The court denied the motion to suppress the fingerprint cards and statement, reasoning that "there is a new act occurring here and this is not a fruit of the poisonous

tree."

On the basis of evidence introduced in the first suppression hearing, appellant filed a motion to suppress her statements to the deputy on the basis that the statements were obtained in violation of her <u>Miranda</u> rights. At a hearing on appellant's second motion, appellant testified that MacFall approached the holding cell where she was incarcerated, asked if she was Kelly Timbers, and told her that he knew she was Kelly Timbers, so she might as well admit it. She testified that MacFall left for five to ten minutes, then returned and told her that someone had come to the office and said that appellant's name was Kelly. According to appellant, MacFall told her that someone was going to retrieve a picture of appellant, so appellant should admit that her name was Kelly. Appellant testified that MacFall left again, returned, and told her that they would not press charges if she admitted her name was Kelly. Appellant testified that she admitted her identity at this point.

The court denied appellant's motion to suppress her statements. The court found MacFall's testimony to be credible and found that the sequence of events was not as appellant described. The court specifically found as follows: "Certainly the defendant was in custody, but what occurred was not interrogation." After a trial without a jury, the court found appellant not guilty of providing false information to a police officer, but found her guilty of both counts of forgery.

I.

<u>Miranda</u>

Appellant contends her statement in the holding cell that she was in fact Kelly Timbers was obtained in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). We are bound by the trial court's findings of historical fact unless those findings are plainly wrong or without evidence to support them. <u>See, e.g.</u>, <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (<u>en</u> <u>banc</u>) (citing <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996)). We review <u>de</u> <u>novo</u> questions of law and the trial court's application of defined legal standards to the particular facts of a case. <u>See, e.g.</u>, <u>Quinn v. Commonwealth</u>, 25 Va. App. 702, 712-13, 492 S.E.2d 470, 475-76 (1997) (citing cases) (holding that whether a person has invoked her <u>Miranda</u> right to counsel and whether she has waived that right are reviewed <u>de</u> <u>novo</u>); <u>McGee</u>, 25 Va. App. at 198, 487 S.E.2d at 261 (1997) (citing cases) (holding that issue of whether seizure occurred is reviewed <u>de</u> <u>novo</u>); <u>Shears v. Commonwealth</u>, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996) (citing <u>Ornelas</u>, 517 U.S. at 699) (holding that determinations of reasonable suspicion and probable cause are reviewed <u>de</u> <u>novo</u>); <u>Watson v. Commonwealth</u>, 19 Va. App. 659, 663, 454 S.E.2d 358, 361 (1995) (citing <u>Wilson v. Commonwealth</u>, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992) (holding that issue of whether a seizure continues or has abated is reviewed <u>de</u> <u>novo</u>).

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination," commonly known as Miranda warnings. Miranda, 384 U.S. at 444. "Failure to give Miranda warnings prior to custodial interrogation requires suppression of any illegally obtained statements." Blain v. Commonwealth, 7 Va. App. 10, 13, 371 S.E.2d 838, 840 (1988) (citing Miranda, 384 U.S. at 479). "Before Miranda is triggered, however, an individual must be both in 'custody' and subjected to 'interrogation.'" Id.

The Commonwealth concedes that appellant was not administered Miranda warnings at any point prior to her statement. Similarly, the Commonwealth conceded in the trial court that appellant was in custody at the time of the statement and is bound by that concession here. See, e.g., Johnson v. Commonwealth, 26 Va. App. 674, 683, 496 S.E.2d 143, 147 (1998) (citing Manns v. Commonwealth, 13 Va. App. 677, 679-80, 414 S.E.2d 613, 615 (1992)). Initially, we must determine whether appellant was subjected to interrogation, i.e., "express questioning or its functional equivalent." See Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The Commonwealth also argues that MacFall's statements to appellant fall under a "routine booking question" exception to Miranda, and that, even if appellant's statements were obtained in violation of Miranda, the

-6-

exclusionary rule should not apply because the Commonwealth would have inevitably discovered the evidence. Finally, the Commonwealth argues that the admission of appellant's statements was harmless error.

A.

Functional Equivalent of Questioning

After hearing evidence that appellant's name was Kelly Timbers rather than Gwendolyn Timbers, MacFall called appellant by the name Kelly Timbers and told her that, if she was Kelly Timbers, she needed to come forth with that information. MacFall did not expressly question appellant. For Miranda purposes, however, interrogation also includes the functional equivalent of questioning. Innis, 446 U.S. at 300-01.

The Supreme Court has defined the functional equivalent of questioning as "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301; see also Pennsylvania v. Muniz, 496 U.S. 582, 600-01 (1990) (citing Innis, 446 U.S. at 301); Arizona v. Mauro, 481 U.S. 520, 526-27 (1987) (citing Innis, 446 U.S. at 301). The Supreme Court indicated that whether a practice "is designed to elicit an incriminating response" is a factor in determining whether the practice is "reasonably likely" to elicit an incriminating response. Innis, 446 U.S. at 301-02 n.7.

Virginia courts have formulated and applied the Innis

standard in several ways.  In applying the Innis standard, Virginia courts have discussed (1) the subjective intent of the police, see, e.g., Wright v. Commonwealth, 2 Va. App. 743, 746, 348 S.E.2d 9, 12 (1986) (noting "the total absence of any evidence that the questioning here was intended or designed to produce an incriminating response"), (2) the objective likelihood of self-incrimination, see, e.g., Riddick v. Commonwealth, 22 Va. App. 136, 145, 468 S.E.2d 135, 139 (1996) (citing Innis, 446 U.S. at 301) (explaining that "police activities reasonably incidental to arrest and custody . . . are unlikely to elicit an 'incriminating response'"), and (3) an objective evaluation of the manifestation of the officer's intent.  See, e.g., Blain, 7 Va. App. at 15, 371 S.E.2d at 841 (interpreting the Innis standard to require "a determination whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response").

An interpretation of the "reasonably likely to elicit an incriminating response" test as purely objective would require a case-by-case evaluation of how likely a defendant is to respond to a given statement by police.  See Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 6.7(a) (1984).  A requirement of actual proof that "questioning . . . was intended or designed to produce an incriminating response," Wright, 2 Va. App. at 746, 348 S.E.2d at 12, on the other hand, is contrary to the Supreme Court's admonition that the definition of interrogation "focuses

primarily upon the perceptions of the suspect, rather than the intent of the police."  Innis, 446 U.S. at 301.

Although Virginia courts have articulated the requirements of the Innis standard in several ways, we are bound by the interpretation of Innis outlined in Blain, 7 Va. App. at 15, 371 S.E.2d at 841.  See Johnson v. Commonwealth, 252 Va. 425, 430, 478 S.E.2d 539, 541 (1996) (holding that a decision by one panel of this Court is binding on a subsequent panel unless overruled by this Court sitting en banc or the Supreme Court of Virginia).  In Blain, we held:  "We interpret the Innis standard as requiring a determination of whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response."  7 Va. App. at 15, 371 S.E.2d at 841.  Although other Virginia cases have applied the Innis test as either purely subjective or purely objective, Blain contains the only square holding on the issue.  The Blain interpretation is also "consistent with the result reached in Innis, 'will not be difficult to apply' because it is an objective test which does not require a determination of the actual perception of the suspect, but yet is 'fully responsive to the concerns of the Miranda decision' because it identified the situation in which the subject 'will experience the "functional equivalent" of direct questioning' by concluding that the police are trying to get him to make an incriminating response."  LaFave & Israel, supra, at § 6.7(a) (quoting Welsh S. White, Interrogation Without

Questions: Rhode Island v. Innis and United States v. Henry, 78 Mich. L. Rev. 1209, 1236 (1980)).

Applying this standard, we hold that MacFall's statements to appellant constituted interrogation. After learning that appellant's real name was probably Kelly Timbers rather than Gwendolyn Timbers, MacFall went to the holding cell door and called appellant by the name Kelly Timbers. In the first testimony he gave on the issue, MacFall described this exchange as "question[ing] her as to what her real identity was." After appellant looked at MacFall, MacFall told her that if she was Kelly Timbers, she needed to admit that fact. MacFall testified that in response to these statements, appellant "came clean to me and said that she was actually Kelly Yvette Timbers." A reasonable observer would view MacFall's statements as designed to elicit appellant's incriminating statement that she was, in fact, Kelly Timbers.

B.

Routine Booking Question Exception

The Commonwealth argues that Miranda warnings were unnecessary because MacFall's interrogation of appellant was an attempt to obtain accurate booking information pursuant to arrest and custody. In Innis, the Supreme Court of the United States defined the functional equivalent of interrogation as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are

reasonably likely to elicit an incriminating response from the suspect."  Innis, 446 U.S. at 301.

Applying this definition, we held in Wright, 2 Va. App. at 746, 348 S.E.2d at 12, that the police need not administer Miranda warnings prior to obtaining biographical information for a fingerprint card.  In so holding, we reasoned as follows:

> Under the facts presented here, we believe
> that [the defendant's] statement concerning
> his address [made on a fingerprint card] was
> obtained as a result of conduct normally
> attendant to arrest and custody.  We also
> note the total absence of any evidence that
> the questioning here was intended or designed
> to produce an incriminating response.  For
> these reasons, Miranda warnings were
> unnecessary.

Id.  As previously discussed, we adopted an interpretation of the Innis standard in Blain, 7 Va. App. at 15, 371 S.E.2d at 841, which governs our inquiry in this case:  "whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response."

In Muniz, 496 U.S. at 601 (plurality opinion) (quoting Brief of the United States as Amicus Curiae 12 (quoting United States v. Horton, 873 F.2d 180, 181 n.2 (8th Cir. 1989))), a four-justice plurality of the Supreme Court[1] reiterated the Innis

---

[1]Four justices found it "unnecessary to determine whether the questions fall within the 'routine booking question' exception to Miranda" recognized by the plurality.  Id. at 608 (Rehnquist, C.J., concurring in part, concurring in the result in part, and dissenting in part).  The ninth justice rejected the "routine booking question" exception on the basis that the exception "would necessitate difficult, time-consuming litigation over whether particular questions asked during booking are 'routine,' whether they are necessary to secure biographical information,

"reasonably likely to elicit an incriminating response" standard, but wrote that the answers to biographical questions asked during booking "fall within a 'routine booking question' exception which exempts from Miranda's coverage questions to secure the '"biographical data necessary to complete booking or pretrial services."'" In a footnote, the plurality wrote: "As amicus United States explains, 'recognizing a "booking exception" to Miranda does not mean, of course, that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's Miranda rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions.'" Id. at 602 n.14 (plurality opinion) (quoting Brief for the United States as Amicus Curiae).

No Virginia court has addressed the viability or scope of a routine booking question exception in Virginia subsequent to Muniz. Assuming without deciding that a routine booking question exception exists in Virginia, MacFall's interrogation of appellant does not fall within the exception. Most importantly, MacFall did not confront appellant in the holding cell to clarify an ambiguity in her statements made during booking; rather, he sought to investigate what he believed to be false information. In addition, MacFall's statement that if appellant had given a

whether that information is itself necessary for recordkeeping purposes, and whether the questions are--despite their routine nature--designed to elicit incriminating testimony." Id. at 608 (Marshall, J., concurring in part and dissenting in part).

false name, she needed to come forward with that information, can hardly be considered a routine booking question. Finally, MacFall's interrogation of appellant does not fall under a routine booking question because, under the standard in <u>Blain</u>, 7 Va. App. at 15, 371 S.E.2d at 841, a reasonable observer would view MacFall's statements as designed to elicit appellant's incriminating statement that she was, in fact, Kelly Timbers.

C.

Inevitable Discovery

The Commonwealth argues that, notwithstanding a violation of <u>Miranda</u>, we should not apply the exclusionary rule in this case because the police inevitably would have discovered appellant's true identity. In <u>Nix v. Williams</u>, 467 U.S. 431, 447 (1984), the Supreme Court of the United States held that "if the government can prove that the evidence [obtained by illegal means] would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury." We have explained the requirements of the inevitable discovery doctrine:

> the inevitable discovery exception requires that the prosecution show: "(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct; (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct, and (3) that the police also prior to the misconduct were actively pursuing the alternative line of investigation."

-13-

Walls v. Commonwealth, 2 Va. App. 639, 656, 347 S.E.2d 175, 185 (1986) (quoting United States v. Cherry, 759 F.2d 1196, 1204 (5th Cir. 1985)).

Specifically, the Commonwealth argues that because the police had appellant's fingerprints, they would have inevitably discovered appellant's true identity. No Virginia court has applied the inevitable discovery doctrine outside of the derivative "fruit of the poisonous tree" context. Furthermore, no Virginia court has applied the inevitable discovery doctrine to the suppression of a statement obtained in violation of Miranda. See Keeter v. Commonwealth, 222 Va. 134, 140 & n.2, 278 S.E.2d 841, 845 & n.2 (1981) (noting in dicta that evidence seized after assumed illegal entry was not "fruit of the poisonous tree" because search warrant was in process of preparation); Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974) (explaining that inevitable discovery is an exception to the "fruit of the poisonous tree" doctrine); Commonwealth v. Ealy, 12 Va. App. 744, 758, 407 S.E.2d 681, 690 (1991) (holding that consent to search a garage was fruit of illegal search, and rejecting claim that police would have inevitably searched the garage); Walls, 2 Va. App. at 656-57, 347 S.E.2d at 185 (holding that consent to search a trailer was fruit of illegal entry, and rejecting claim that police would have inevitably searched the trailer).

Assuming without deciding that inevitable discovery analysis

applies in the context of a statement directly obtained in violation of <u>Miranda</u>, the Commonwealth has not carried its burden to prove the three <u>Walls</u> factors.  The Commonwealth did not argue the inevitable discovery doctrine to the trial court.  In addition, the Commonwealth did not present evidence at the hearing that the police were actively pursuing any alternative line of investigation into appellant's identity.  The court specifically found credible MacFall's denial that he had told appellant he had sent an officer to Culpeper, Virginia, to obtain a photograph of her; this action was the only alternative line of investigation mentioned.  Most importantly, the Commonwealth never presented any evidence that the police fingerprint cards would have established appellant's identity.  We will not exempt the violation of appellant's <u>Miranda</u> rights from the exclusionary rule under these circumstances.

D.

Harmless Error

Finally, the Commonwealth argues that the <u>Miranda</u> error, if any, was harmless.  A violation of <u>Miranda</u> is subject to review for harmless error.  <u>Pearson v. Commonwealth</u>, 221 Va. 936, 945, 275 S.E.2d 893, 899 (1981).  In Virginia, constitutional error "is harmless only when the reviewing court is 'able to declare a belief that it was harmless beyond a reasonable doubt.'" <u>Lavinder v. Commonwealth</u>, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (<u>en</u> <u>banc</u>) (quoting <u>Chapman v. California</u>, 386 U.S. 18,

24 (1967)).

We cannot say the trial court's error in admitting appellant's admission that she was Kelly Timbers rather than Gwendolyn Timbers was harmless. Appellant's admission to MacFall was the most important evidence admitted at appellant's trial for forgery on the issue of whether appellant's signature as Gwendy Timbers was, in fact, false. The only other evidence admitted at trial on the issue was MacFall's testimony that a person came into the sheriff's office and asked for Kelly Timbers. Without testimony as to appellant's admission, there would have been little evidence of the falsity of appellant's signature. Under these circumstances, we cannot declare a belief that the error, if any, was harmless beyond a reasonable doubt. Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911 (citing Chapman, 386 U.S. at 24).

Therefore, we reverse appellant's convictions because of the violation of her Miranda rights. Given our disposition of this issue, we need not reach appellant's argument that her statement to MacFall was the fruit of her illegal arrest. Notwithstanding the fact that we reverse for a Miranda violation, however, we address appellant's sufficiency of the evidence argument because the Commonwealth would be barred on double jeopardy grounds from retrying appellant if we were to reverse for insufficiency of the evidence. See, e.g., Burks v. United States, 437 U.S. 1, 18 (1978).

II.

Sufficiency of the Evidence

Appellant argues the evidence was insufficient to support her convictions for forgery because no evidence at trial proved that "Gwendy Timbers" was not her usual signature. "When the sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed in the light most favorable to the Commonwealth, and the reasonable inferences fairly deducible from that evidence, prove every essential element of the offense beyond a reasonable doubt." Stevenson v. Commonwealth, 27 Va. App. 453, 459, 499 S.E.2d 580, 583 (1998) (citing cases), reh'g en banc granted, __ Va. App. __, __ S.E.2d __ (July 21, 1998). "We will not disturb a jury's verdict unless it is plainly wrong or without evidence to support it." Id. (citing George v. Commonwealth, 242 Va. 264, 278, 411 S.E.2d 12, 20 (1991)).

Code § 18.2-172, codifying the common law crime of forgery, provides that "[i]f any person forge any writing, . . . to the prejudice of another's right, . . . [she] shall be guilty of a Class 5 felony." Under the common law, forgery "is defined as 'the false making or materially altering with intent to defraud, or any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.'" Fitzgerald v. Commonwealth, 227 Va. 171, 173-74, 313 S.E.2d 394, 395 (1984) (quoting Bullock v. Commonwealth, 205 Va. 558, 561, 138 S.E.2d 261, 263 (1964)).

Essentially, appellant argues that the evidence was insufficient to prove that her signature, "Gwendy Timbers," was false. We hold that the evidence was sufficient to support an inference that appellant's signature was false.

While being fingerprinted, appellant told MacFall that her name was Gwendolyn Ann Timbers. Appellant signed the fingerprint card bearing the name Gwendolyn Ann Timbers with the signature, "Gwendy Timbers." The trial court was entitled to reasonably infer that "Gwendy" was a short form of "Gwendolyn." A woman brought clothing for appellant while appellant was incarcerated and referred to appellant as "Kelly." The trial court was entitled to infer from this evidence that appellant was commonly known as "Kelly" rather than "Gwendy." Finally, when confronted by MacFall, appellant admitted she was Kelly Timbers and not Gwendolyn Timbers. Cf. Lockhart v. Nelson, 488 U.S. 33, 41 (1988) (holding that reviewing court should consider all admitted evidence, including illegally admitted evidence, in assessing the sufficiency of the evidence to support a conviction). Given this evidence, the court was entitled to reasonably infer that appellant falsely signed the name "Gwendy" in conjunction with her provision of the false name "Gwendolyn." See Reid v. Commonwealth, 16 Va. App. 468, 471-72, 431 S.E.2d 63, 65 (1993) (approving inference that defendant signed false name). The evidence, along with the reasonable inferences deducible therefrom, was sufficient to support appellant's convictions.

We reverse and remand for a new trial, if the Commonwealth be so advised.

<u>Reversed and remanded.</u>