COURT OF APPEALS OF VIRGINIA

Present: Judges Willis, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


TERESA B. PRESTON

MEMORANDUM OPINION[*] BY
v.    Record No. 2059-00-1    JUDGE ROBERT J. HUMPHREYS
                              JUNE 12, 2001

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
Rodham T. Delk, Jr., Judge

(Teresa B. Preston, pro se, on briefs).
Appellant submitting on briefs.

Donald E. Jeffrey, III, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Teresa B. Preston appeals her conviction, after a bench
trial, for taking a deer with an unlawful device in violation of
Virginia Code § 29.1-556. Specifically, Preston alleges that the
trial court erred in 1) failing to grant her motion to dismiss on
the ground that it improperly construed § 10-26 of the Code of
Southampton County; 2) finding the device used to hunt the deer
illegal; 3) ruling that Southampton ordinance § 10-26 was
unenforceable due to lack of notice to the Game Commission; and 4)
finding Code § 29.1-528 to allow the use of muzzleloading rifles,

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

but also to enable counties to prohibit their use during certain seasons for certain animals.

On the morning of November 12, 1999, Preston entered a Southampton County hardware store and checked in an eight-point buck (male deer) that she had killed in Southampton County. Preston shot the deer with a Remington Model, 700-ML, .50 caliber "muzzleloader." She used saboted ammunition with a .44 caliber ball. The date on which Preston killed the deer was during the early special hunting season for deer, approximately two weeks prior to the beginning of the general hunting season for deer.

Later that same evening, Preston sent an e-mail to Glenn Askins, an official with the Department of Game and Inland Fisheries (DGIF), and reported what she had done. Preston wrote, "This is my first deer !!!, [sic] and if the Department of Game & Inland Fisheries chooses to cite me for violating Southampton's Miscellaneous offences [sic] ordinance § 10-26, I would be most grateful." Preston went on to write that she believed the current Southampton ordinance, § 10-26, barring the use of a rifle of a caliber larger than twenty-two hundredths of an inch (.22) for hunting any animal in the county, with the exception of small game animals outside of the general open season, to be invalid due to the County's failure to provide DGIF with notice of the ordinance,

-

prior to its enactment in 1991.[1]  As a result, Preston contended

that the previous version of § 10-26, which she alleged allowed

"hunting of game species outside the general season for deer and

turkey with firearms," was the ordinance in effect at the time she

killed the deer.[2]  Preston ended her e-mail stating, "We need to

---

[1]  Southampton County Code § 10-26 states:

Hunting Weapons Restricted

(a)  It shall be unlawful for any person to hunt in the county with a rifle of a caliber larger than twenty-two one hundredths of an inch (.22); provided, however, that this section shall not be construed to:

(1)  Prohibit any person from shooting groundhogs with a larger caliber rifle between March 1 and August 31.

(2)  Prohibit hunting for small game animals with muzzle-loading rifles except during the general open season for the hunting of deer and turkey with firearms; and provided, further, the caliber of ball used in such muzzle-loaded rifle shall not exceed forty-five one hundredths of an inch (.45).

(b)  Any person violating the provisions of this section, upon conviction, shall be punished by a fine of not more than five hundred dollars ($500.00).

[2]  The previous version, § 11-36.1, which was recodified as § 10-26 in 1991, read as follows:

Hunting -- Use of large-caliber weapons prohibited; exceptions.

It shall be unlawful for any person to hunt in the county with a rifle of a caliber larger than twenty-two one hundredths of an inch (.22); provided, however, that this section shall not be construed to:

-

get this before a judge.  Can regional help?"  In response, and after investigating the matter, DGIF cited Preston for "tak[ing] a deer with an unlawful device as defined in 4 VAC § 15-270-20."[3]

At trial, Preston, who was representing herself, raised a motion to dismiss at the close of the Commonwealth's case, arguing that "no offense was committed."  Specifically, Preston argued that 4 VAC § 15-90-80 allows "muzzleloading firearms," as opposed

---

(a)  Prohibit any person from shooting
groundhogs with a larger caliber rifle,
except during general open season for
hunting game animals with firearms; or

(b)  Prohibit hunting with muzzle-loading
rifles except during the general open season
for the hunting of deer and turkey with
firearms; and provided further, the caliber
of ball used in such muzzle-loaded rifle
shall not exceed forty-five one hundredths
of an inch (.45).

Any person violating the provisions of this
section, upon conviction, shall be punished
by confinement in jail for not more than six
months and a fine of not more than five
hundred dollars, either or both. (4-28-80.)

[3] Title 4 of the Virginia Administrative Code § 15-270-20, provides the following:

Rifles prohibited in hunting bear and deer
in certain counties and cities:  Except as
otherwise provided in 4 VAC 15-270-30 of
this chapter or by local ordinance, it shall
be unlawful to use a rifle of any caliber
for the hunting of bear and deer in the
counties of Chesterfield, Isle of Wight, New
Kent, Southampton and Sussex and in the
cities of Chesapeake and Suffolk (that
portion formerly Nansemond County).

-

to rifles, to be used in all cities where firearms are allowed.[4] Preston now argued that ordinance § 10-26 was validly enacted and that since it permitted the use of muzzleloading rifles for hunting small game animals outside the general open season for deer and turkey, under 4 VAC § 15-90-80 the use of muzzleloading firearms must be permitted.

In response, the Commonwealth argued the 1991 re-enactment or recodification of the Southampton County Code abolished all prior laws in the County. Since, as required by Virginia Code

---

[4] 4 VAC § 15-90-80 provides the following, in relevant part:

Muzzleloading gun hunting.

A. Early special muzzleloading season. It shall be lawful to hunt deer with muzzleloading guns from the first Monday in November through the Saturday prior to the third Monday in November, both dates inclusive, in all cities and counties where hunting with a rifle or muzzleloading gun is permitted east of the Blue Ridge Mountains, except on national forest lands in Amherst, Bedford and Nelson counties and in the cities of Chesapeake, Suffolk (east of the Dismal Swamp Line) and Virginia Beach.

\* \* \* \* \* \* \*

F. Muzzleloading gun defined. A muzzleloading gun, for the purpose of this section, means a single shot flintlock or percussion weapon, excluding muzzleloading pistols, .45 caliber or larger, firing a single projectile or sabot (with a .38 caliber or larger projectile) of the same caliber loaded from the muzzle of the weapon and propelled by at least 50 grains of black powder (or black powder equivalent).

§ 29.1-528, the amendment to the language of § 10-26, formerly § 11-36.1, was not sent to DGIF as required by Code § 29.1-528, and apparently not published by DGIF, the ordinance was unenforceable.[5]  The Commonwealth argued that, therefore, there was no language in the Southampton County Code, either permitting or barring the use of muzzleloading weapons, as would be required by 4 VAC § 15-90-80.

---

[5] Virginia Code § 29.1-528 provides that:

> Counties or cities may prohibit hunting with certain firearms. --
>
> A.  The governing body of any county or city may, by ordinance, prohibit hunting in such county or city with a shotgun loaded with slugs, or with a rifle of a caliber larger than .22 rimfire.  However, such ordinance may permit the hunting of groundhogs with a rifle of a caliber larger than .22 rimfire between March 1 and August 31.  Such ordinance may also permit the use of muzzle-loading rifles during the prescribed open seasons for the hunting of game species.  Any such ordinance may also specify permissible type of ammunition to be used for such hunting.
>
> B.  No such ordinance shall be enforceable unless the governing body notifies the Director by registered mail prior to May 1 of the year in which the ordinance is to take effect.
>
> C.  In adopting an ordinance pursuant to the provisions of this section the governing body of any county or city may provide that any person who violates the provisions of the ordinance shall be guilty of a Class 3 misdemeanor.

-

The trial court overruled Preston's motion finding "this is a .50 caliber rifle. The county's code does not permit the use of a rifle of .50 caliber under any reading of it . . . ." The trial court ultimately convicted Preston of the charge, finding:

> The law in this case is clear. However you wish to interpret 10-26, as enforceable or unenforceable, in any event there is a prohibition against the taking of deer in Southampton County by a muzzleloading rifle such as was used in this case regardless of the caliber, and that prohibition existed on November 12, 1999, when the deer was taken in this case.

On appeal, Preston contends that the trial court erred in overruling her motion to dismiss because it misread § 10-26, determining that the .45 caliber restriction referred to rifle caliber, instead of ball. Preston also argues that the trial court erred in finding the gun she used to be a "muzzleloading rifle," and in finding that the provisions of § 10-26 were void due to Southampton County's failure to properly notify DGIF of the changes in 1991.[6]

"We are bound by the trial court's findings of historical fact unless those findings are plainly wrong or without evidence to support them. We review <u>de</u> <u>novo</u> questions of law and the

_____

[6] Preston also argues that the trial court erred in finding that Virginia Code § 29.1-528 enables counties such as Southampton to permit the use of muzzleloading rifles, but also allows them to prohibit the use of the muzzleloading rifle during certain seasons and for certain animals. However, we do not address this argument as Preston failed to raise this question in her petition for appeal. <u>See</u> Rule 5A:12(c).

-

trial court's application of defined legal standards to the particular facts of a case." _Timbers v. Commonwealth_, 28 Va. App. 187, 193, 503 S.E.2d 233, 235-36 (1998) (citations omitted).

The trial court correctly found that 4 VAC § 15-90-80 permits the hunting of deer with muzzleloading guns during early special deer season.  However, this only applies to those cities and counties where hunting with a rifle or muzzleloading gun is permitted.  We do not read § 10-26 of the Southampton County Code to permit deer hunting with muzzleloading rifles.

Although muzzleloading gun is defined by 4 VAC § 15-90-80(B), neither the regulations nor the Virginia Code define the term muzzleloading rifle.  In light of this, we turn to the ordinary dictionary definition of the term to determine its meaning.  Contrary to Preston's argument, we are not bound by the definition of "rifle," as it appears in the Code of Federal Regulations § 179.1 _et_ _seq_., interpreting the provisions of the National Firearms Act.  "Ordinarily, when a particular word in a statute is not defined therein, a court must give it its ordinary meaning.  In interpreting a statute, the Code of Virginia constitutes a single body of law, and other sections can be looked to where the same phraseology is employed." _Moyer v. Commonwealth_, 33 Va. App. 8, 35, 531 S.E.2d 580, 593 (2000) (_en_ _banc_) (citations omitted).  However, we are not bound by

-

similar phraseology utilized in federal sources not applicable to the statute at issue.

Webster's Third New International Dictionary 1954 (1981), defines the ordinary meaning of "rifle" as "a firearm having a rifled bore and intended to be fired from the shoulder." Sergeant Lannie Chitwood of DGIF testified that the weapon in question was a "muzzle loading rifle." This testimony clearly supported the trial court's determination that Preston's gun met the definition of a "rifle," as that term is used in § 10-26.

Preston is incorrect in arguing that the trial court made the determination that § 10-26 was invalid due to Southampton County's failure to notify DGIF of the amendments. In fact, on the motion to strike, the trial court accepted as true Preston's argument that § 10-26 was valid. In addition, on final judgment, the trial court made alternative findings ruling that if § 10-26 was a valid ordinance, hunting with muzzleloading rifles is not permitted in Southampton County, with the exception of hunting small game animals outside of the general open season for deer. In the alternative, if § 10-26 was not valid, the trial court ruled that hunting with muzzleloading rifles is still not permitted under 4 VAC § 15-80-90 as, due to the recodification of the Southampton County Code, there would be no ordinance in Southampton either permitting or barring the use of this particular firearm.

-

Finally, Preston correctly argues that in making its ruling on her motion to strike, the trial court misread § 10-26 as it pertained to the appropriate caliber of firearm versus ball. However, as set forth above, we find that the trial court reached the correct result in both the ruling on the motion to strike, as well as final judgment.  See Harris v. Commonwealth, 33 Va. App. 325, 332, 533 S.E.2d 18, 21 (2000) (as long as the correct reason, along with a factual basis to support it, is raised in the trial court, an appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason).  Therefore, we affirm the judgment of the trial court.

Affirmed.