# CIRCUIT COURT OF THE CITY OF MARTINSVILLE

Commonwealth of Virginia

v.

Justin Mitchell Harris

February 4, 2011

Case Nos. CR10000320-00, CR10000321-00

BY JUDGE G. CARTER GREER

Having been indicted for rape and animate object sexual penetration, the defendant has filed a motion to suppress a statement that he made to a law enforcement officer at the Martinsville City Jail on June 11, 2010. The Commonwealth concedes that the defendant was in custody, within the meaning of *Miranda v. Arizona, infra,* and it is undisputed that the officer did not read to the defendant his rights under that decision before the defendant made his statement. The issues are (1) whether the words and actions of the officer amounted to the functional equivalent of an interrogation and (2) whether the defendant's statement was voluntary.

The court conducted an evidentiary hearing on January 25, 2011, and finds the following facts. The defendant, who would not turn eighteen until December 13, 2010, was incarcerated on a charge of violating his juvenile probation. In view of his age, jail staff placed the defendant in a holding cell that segregated him from the general population until he could be transferred to W. W. Moore Detention Center in Danville. The cell was approximately six feet in width and eight feet in length, and there was a mat on the floor. The defendant was "dozing" on the mat, since he was tired and "hungover" from having been intoxicated the previous night. Upon learning from the defendant's juvenile probation officer that the defendant was in jail, Investigator Andy Petty of the Martinsville Police Department went to the holding cell and, after introducing himself, told the defendant that he was investigating "a complaint by Amber Downs, a rape allegation against him." The defendant sat up and responded "matter of factly," "Let

me tell you something. I've taken some criminal justice courses, and everyone knows that if she doesn't say 'no' or can't say 'no,' it's consensual sex, and she never said 'no' while I was having sex with her. I never heard her say 'no' or anything, so that makes it consensual. Everyone knows that." Inv. Petty never asked a question, nor did he intend to interrogate the defendant at that time. Instead, it had been the investigator's intention to take a statement from the defendant in Danville on the following day. The investigator's purpose in meeting with the defendant in the holding cell was to inform him of an ongoing investigation. Prior to meeting with the defendant, the investigator had enough information to file a petition only for animate object sexual penetration; after the meeting, the investigator swore out petitions for rape and animate object sexual penetration.

It is well-established that " '[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination,' commonly known as *Miranda* warnings." *Timbers v. Commonwealth*, 28 Va. App. 187, 194, 503 S.E.2d 233 (1998) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). In *Rhode Island v. Innes*, 446 U.S. 291 (1980), the Supreme Court expanded the definition of "interrogation":

> [T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect rather than the intent of the police.

*Id.* at 300-02. The test is "whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response." *Blain v. Commonwealth*, 7 Va. App. 10, 15, 371 S.E.2d 838 (1988). *See Gates v. Commonwealth*, 30 Va. App. 352, 516 S.E.2d 731 (1999); *Watts v. Commonwealth*, 38 Va. App. 206, 562 S.E.2d 699 (2002). "If the objective observer concludes that 'the police are trying to get [the suspect] to make an incriminating response,' then the officer's words and actions constitute the functional equivalent of interrogation, and *Miranda* applies." *Emerson v. Commonwealth*, 43 Va. App. 263, 273, 597 S.E.2d 242 (2004) (quoting *Timbers*, 28 Va. App. at 196.) In *Blain, supra*, the Court of Appeals stated that "[i]f a suspect's statement was not foreseeable, then it is volunteered. 'Volunteered statements of any kind are not barred by the Fifth Amendment

and their admissibility is not affected by [*Miranda*]'." *Id.*, 7 Va. App. at 15 (quoting *Miranda*, 384 U.S. at 478).

In applying this test, the Court of Appeals has held that, in the following factual scenarios, the words and actions of law enforcement officers did not constitute the functional equivalent of interrogation: (1) detectives took the defendant to an interview room and arrested him, and, while one of the detectives read the warrant, the defendant made an incriminating statement (*Gates*, 30 Va. App. at 354); (2) the defendant made a statement during routine booking questions that were not designed to elicit an incriminating response (*Watts*, 38 Va. App. at 215-16); (3) an officer searched an inmate's cell, found incriminating evidence, and held it up, at which point the inmate, standing between two correctional officers, made a statement (*Blain*, 7 Va. App. at 12); and (4) while detaining the defendant during the execution of a search warrant, an officer asked what clothes he wanted, and the defendant asked for a pair of jean shorts that contained cocaine (*Emerson*, 43 Va. App. at 269). On the other hand, in *Timbers, supra,* the defendant signed a fictitious name to a fingerprint card and CCRE form during booking, and a deputy told the defendant "if she was Kelly Timbers, that she needed to come forth with that information." *Id.*, 28 Va. App. at 191. The defendant then admitted she was Kelly Timbers. The trial court denied the motion to suppress and convicted the defendant of two counts of forgery, but the Court of Appeals reversed, holding that the deputy's statement to the defendant constituted interrogation. *Id.*, 28 Va. App. at 197.

Although the test is clear, it is difficult to apply in practice, and the factual context of the officer's words and actions is extremely important in its application. In the case at bar, the defendant argues that, in confronting him with "specific allegations of criminal conduct, using the word 'rape' and naming the alleged victim," investigator Petty subjected the defendant to the functional equivalent of interrogation. Defendant's Memorandum, p. 6. The defendant points out that, when the investigator entered the cell, the defendant, a juvenile, "had been dozing alone in the holding cell, and was awakened" by the investigator. Moreover, the defendant "was never given the opportunity to contact a parent, his sister, or his grandmother" before meeting with the investigator. Defendant's Memorandum, p. 7. The Commonwealth contends that the investigator "spoke to the defendant in a cordial tone of voice," and that, since "[h]is purpose was to let the defendant know, before he was transported to W. W. Moore in Danville, that Ms. Downs had accused him of rape," the defendant was not subjected to the functional equivalent of interrogation. Commonwealth's Memorandum, p. 2.

The court finds that, under these circumstances, an objective observer would view Investigator Petty's words as designed to elicit an incriminating response. In the first place, although the court does not assign

an improper motive to the investigator, whom the court has always found to be forthright, the court cannot help but wonder what his purpose actually was if he was planning on formally questioning the defendant the following day. Why was it necessary for the investigator to notify the defendant that he was the subject of a rape investigation if the investigator did not intend to ask him any questions at that time? Should not it have occurred to Investigator Petty that, confronted with a rape accusation, the defendant, a seventeen year old boy, would likely make some kind of statement? What reaction would a seasoned investigator expect? It was entirely foreseeable that, when the investigator informed the defendant of the rape accusation, the defendant would make some kind of statement in light of the age of the defendant and the opprobrious nature of the allegation. Therefore, the defendant's statement is inadmissible on the ground that it was obtained in contravention of *Miranda, supra*.

In view of the court's ruling on the first issue, the court declines to rule on the second issue, finding that it is not necessary to rule on the voluntariness of the defendant's statement. The motion to suppress is granted, and the court will enter an appropriate order.