UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Alston and Senior Judge Frank
Argued at Norfolk, Virginia

RICKY DAVIS, S/K/A
 RICKY G. DAVIS

                                MEMORANDUM OPINION* BY
v.       Record No. 0760-17-1          JUDGE ROSSIE D. ALSTON, JR.
                                       MAY 1, 2018

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
Robert G. O'Hara, Jr., Judge

Paul A. Fritzinger, Deputy Public Defender, for appellant.

John Ira Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Ricky Davis ("appellant") asserts that the Circuit Court of Southampton County ("trial

court") erred in denying him the ability to waive the assistance of counsel at his probation

violation hearing. For the reasons stated below, we decline to consider appellant's arguments.

BACKGROUND

Appellant was originally placed on probation following prison sentences imposed in 2000

for possession of cocaine and possession of heroin. In July 2016, appellant drove to the

probation office for a meeting with his probation officer. The probation officer witnessed

appellant drive into the parking lot of the office and park his vehicle. The probation officer

decided to run the vehicle's license plate through the state database. The search results revealed

that appellant's license was suspended; therefore, appellant's driving of the vehicle constituted a

violation of his probation. Appellant entered the probation office, where the probation officer

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

informed him that she could not permit appellant to drive home from the appointment due to his license status. The probation officer also requested that appellant surrender his car keys to her. Appellant repeatedly denied that his license had been suspended and became increasingly agitated by the probation officer's requests. Appellant then became combative with the probation officer, using multiple derogatory phrases and other threatening language. Appellant cursed repeatedly and stated that he was frustrated. After the probation officer told appellant "watch your language," appellant told the probation officer to "watch herself." Appellant then said "you deserve to have your fucking face punched in" and stepped toward the probation officer. At that point, a supervisor determined that appellant should be arrested and issued a PB-15 to immediately take him into custody. Shortly thereafter, appellant apologized for acting in a belligerent manner.

At the probation violation hearing, the trial court learned about the procedural history of the case. After appellant was arrested in July 2016, the probation violation hearing was initially scheduled for September 2016 but was continued to November 2016 after appellant's attorney withdrew and a public defender was appointed. In November 2016, the case was continued again to February 2017 based on a competency evaluation request by appellant's new counsel. The hearing finally took place in April 2017, when the events giving rise to this appeal were heard.

Appellant's case was called, but before the merits portion of the hearing began, appellant informed the trial court of his desire to proceed without counsel. The trial court conducted a colloquy with appellant to determine whether appellant was aware of the consequences of that desire. The following exchange occurred:

> THE COURT: Have you attended law school or are a graduate of a law school?

[APPELLANT]: I'm not asking to represent myself *pro se* so the [trial court] can hold me to a legal position, I'm asking to represent myself *in proper persona* in my right as a sovereigner.

THE COURT: Are you asking the court to–

[APPELLANT]: Judge, I understand what you're saying.

THE COURT: I'm not sure you do.

[APPELLANT]: And I'm answering that question to the best of my ability. I'm not asking to represent myself *pro se* because I know if I represent myself *pro se* that I'm going to be held to the standards that lawyers are held to.

THE COURT: Exactly. That's what I'm going to tell you.

[APPELLANT]: Right. I'm asking to represent myself on my right. I stand on my right to represent myself as a sovereigner in my own person, Your Honor.

The trial court ruled that appellant's motion was not timely and that he had essentially withdrawn it through his contradictory explanations during the colloquy. Appellant protested, asserting "it's a complete misunderstanding," and shortly thereafter, "I never withdrew . . . I stand on my rights."

The probation violation hearing proceeded, and the trial court heard evidence and argument on appellant's actions giving rise to the major violation report. Appellant testified and admitted to everything that had taken place at the probation office. The trial court found appellant in violation and revoked appellant's probation, imposing four years and nine months in the state penitentiary.

This appeal followed.

ANALYSIS

Constitutional arguments are questions of law that are reviewed by the Court *de novo* on appeal. Vay v. Commonwealth, 67 Va. App. 236, 258, 795 S.E.2d 495, 505 (2017) (citing Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005)). "The primary

objective of statutory construction is to ascertain and give effect to legislative intent." Hines v. Commonwealth, 59 Va. App. 567, 573, 721 S.E.2d 792, 795 (2012) (quoting Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998)). Thus, this Court construes a statute "with reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it." Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003). "[T]he trial court's findings of historical fact are binding on appeal unless plainly wrong." Sink v. Commonwealth, 28 Va. App. 655, 658, 507 S.E.2d 670, 671 (1998) (citing Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 235-36 (1998)).

Appellant argues that this Court should (1) determine that the United States Constitution provides a right to counsel in probation violation hearings, a concept that has not been firmly recognized in Virginia, the federal courts, or other states, (2) determine that Code § 19.2-157 and Code § 19.2-160 provide a statutory right to counsel in probation violation hearings, and (3) find that the trial court erred by denying him the opportunity to waive those rights.

In Faretta v. California, 422 U.S. 806 (1975), the United States Supreme Court held that a criminal defendant has a "constitutional right to conduct his own defense." Id. at 836. A quarter-century later, in Martinez v. Court of Appeal, 528 U.S. 152 (2000), the United States Supreme Court significantly trimmed back that right of self-representation, holding that it was "confined to the right to defend oneself *at trial*" and did not extend to the appeals process. Martinez, 528 U.S. at 154, 156 (quoting Faretta, 422 U.S. at 836) (emphasis added). Thus, appellant's argument relies on the theory that "[i]n the context of probation revocation, the constitutional right to counsel, if any, flows from the Due Process Clause of the Fourteenth Amendment rather than from the Sixth Amendment." Walker v. Forbes, 292 Va. 417, 422, 790

S.E.2d 240, 243 (2016) (citing Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973)). In his brief, appellant first asserts that because the Sixth Amendment right to counsel may be waived, his right to counsel in a probation violation hearing that purportedly exists under the Fourteenth Amendment may also be so waived. However, no court has yet concluded that the Fourteenth Amendment contains such a right. Appellant then contends that Code § 19.2-157 and Code § 19.2-160 provide a statutory right to counsel in probation violation hearings. Because the Court concludes that appellant never presented these arguments to the trial court, we decline to consider them.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "Under this rule, a *specific argument must be made* to the trial court at the appropriate time, or the allegation of error will not be considered on appeal. Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) (citing Mounce v. Commonwealth, 4 Va. App. 433, 435, 357 S.E.2d 742, 744 (1987)) (emphasis added).

Because the issue was not properly preserved, appellant's only remaining relief lies in the exceptions to Rule 5A:18. The Court does not find any "good cause" within the record to excuse the lack of a specific argument to the trial court. Furthermore, "it is a rare case in which, rather than invoke [Rule 5A:18], we rely upon the [ends of justice] exception and consider an assignment of error not preserved at trial." Jimenez v. Commonwealth, 241 Va. 244, 249, 402 S.E.2d 678, 680 (1991). "In order to avail oneself of the [ends of justice] exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) (citing Mounce, 4 Va. App. at 436, 357 S.E.2d at 744) (emphasis in original). Moreover, "[w]e

will not consider, *sua sponte*, a 'miscarriage of justice' argument." Edwards, 41 Va. App. at

761, 589 S.E.2d at 448.  Appellant made no such request here.

Even if the alleged errors had been properly preserved, appellant's representations during

his colloquy with the trial court were so internally inconsistent that they constituted dilatory

tactics which then tainted any effort to waive the assistance of counsel.  Appellant offered no

statements through which either the trial court or this Court could conclude that he desired to

waive the assistance of counsel in good faith.  See Faretta, 422 U.S. at 834 n.46 (noting that

"[t]he right of self-representation is not a license to abuse the dignity of the courtroom").

Specifically, appellant informed the trial court that "I'm not asking to represent myself *pro se*

because I know if I represent myself *pro se* that I'm going to be held to the standards that

lawyers are held to."  Appellant also stated "Your Honor . . . I'm not asking to represent myself

*pro se* so the Court can hold me to a legal position, I'm asking to represent myself *in proper*

*persona* in my right as a sovereigner."[1]

---

[1] "The 'sovereign citizen movement' is well documented.  The Federal Bureau of Investigation has classified 'sovereign citizens' as domestic terror threats because they are anti-government extremists."  Colar v. Heyns, No. 1:12-cv-1269, 2013 U.S. Dist. LEXIS 4316, at *9 (W.D. Mich. Jan. 11, 2013).

In Folson-El Bey v. Wells Fargo Home Mortgage, No. 11-cv-13534, 2012 U.S. Dist. LEXIS 58365 (E.D. Mich. Apr. 26, 2012), the Eastern District of Michigan wrote:

> Generally speaking, "free sovereigns" believe that shadowy forces
> have replaced the "real" legal system of the United States — which
> "free sovereigns" refer to as the "common law" — with a new
> system of government based on "admiralty law."  This "new"
> government allegedly "pledged its citizenry as collateral, by selling
> their future earning capabilities to foreign investors, effectively
> enslaving all Americans."  The transaction is effected at birth,
> when parents apply for a Social Security number for their child.
> As a way of breaking free from this "slavery," "free sovereigns"
> claim that the government only has rights over their "corporate
> shell" — their name in all capital letters, as it appears on birth
> certificates and in most government and court documents — but
> not their "real," "flesh and blood" existence.  "Free sovereigns"
> who have made this realization believe they have been "redeemed"

While appellant presented his motion to the trial court in the form of a motion to waive the assistance of counsel and proceed *pro se*, his subsequent statements lacked any legal or rational basis and at best were inconsistent, confusing, and unclear. Appellant's later assertions that the trial court misunderstood his argument and that he desired to "stand on [his] rights" did not serve as a clear argument that this Court may consider.

Affirmed.

---

from the "slavery" imposed by "admiralty law," and consider themselves free from its obligations.

Id. at *4-5 (internal citations omitted).

Here, the trial court encountered a combative and disruptive appellant who argued that because of his self-identification as a "sovereigner," he was thus not subject to the laws of Virginia or the jurisdiction of the court. Appellant maintained that the trial court could not hold him to a legal position, and despite stating that he knew that proceeding *pro se* would result in his being held to the same legal standards as an attorney, he rejected that premise and clearly did not voluntarily and intelligently consent to those standards.