COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Clements and McClanahan
Argued at Richmond, Virginia


ROY W. GRAY

                                             OPINION BY
v.        Record No. 1770-04-2        JUDGE JEAN HARRISON CLEMENTS
                                                   JUNE 21, 2005
CHARLES W. BOURNE, III AND
 TAMARA BOURNE



FROM THE CIRCUIT COURT OF FLUVANNA COUNTY
John R. Cullen, Judge

(Elizabeth Blair Carter; Blair Carter, P.C., on briefs), for appellant.
Appellant submitting on briefs.

Jonathan T. Wren (Martin & Raynor, P.C., on brief), for appellees.

(Rose Burks Emery, Guardian *ad litem* for the infant child, on
brief).  Guardian *ad litem* submitting on brief.


Roy W. Gray appeals from the interlocutory order of adoption of the trial court granting the

petition of Charles W. Bourne, III and Tamara Bourne to adopt Gray's birth son, R.I.B.  On appeal,

Gray contends the trial court erred in ruling that his withholding of consent to the adoption was

contrary to the best interests of his son.[1]  For the reasons that follow, we affirm the judgment of the

trial court.

## I.  BACKGROUND

Under familiar principles of appellate review, we consider the evidence and all

reasonable inferences fairly deducible therefrom in the light most favorable to the Bournes, the

---

[1] Gray also contends on appeal that denying the petition for adoption was not proven to
be detrimental to R.I.B. because no change in the child's physical custody would have occurred
had the adoption petition not been granted.  We will not address this argument, as it was not
presented to the trial court.  See Rule 5A:18.

parties who prevailed below.  See Winfield v. Urquhart, 25 Va. App. 688, 690, 492 S.E.2d 464, 465 (1997).  As relevant to the issue on appeal, the facts are not in dispute.  Samantha Teabout, a cousin of Mr. Bourne, gave birth to R.I.B. on January 30, 2000.  Teabout and Gray, the child's natural father, were never married.  Prior to the child's birth, Gray was arrested for numerous drug offenses.  He was subsequently convicted in federal district court on those charges and is not eligible for parole until 2011.  Teabout was arrested at the hospital the day after R.I.B.'s birth and was subsequently incarcerated for violation of probation for her continued drug use and the commission of other criminal acts.

Following her release from jail in November 2000, Teabout again violated her probation and fled to Atlanta, Georgia, taking R.I.B. with her.  After Teabout was arrested, Mrs. Bourne flew to Atlanta and took physical custody of R.I.B. on December 12, 2001.

The Bournes, who were married on November 21, 2001, obtained legal custody of R.I.B. on February 1, 2002.  On August 18, 2003, they petitioned the trial court to adopt R.I.B.

The trial court conducted a hearing on the Bournes' petition for adoption on June 18, 2004.  Gray and Teabout, who were both incarcerated at the time, refused to consent to the adoption in part because Mr. Bourne was convicted in 1997 of having committed sexual battery of a minor in October 1996.

At the hearing, Mr. Bourne testified on direct examination regarding his conviction.  He explained that the incident leading to his arrest and conviction occurred when he was spending the night at his girlfriend's house.  After he and his girlfriend had gone to bed for the night, the girlfriend's eleven-year-old daughter came into their bedroom and got in bed with them.  His girlfriend took the daughter back to her room, but the daughter later returned.  The girlfriend again took her back to her bed.  The third time the child returned to their bedroom, Mr. Bourne took the child back to her bed.  He lay down with her, and they talked awhile.  The child said she was not

feeling well. They both then fell asleep. Sometime later Mr. Bourne awoke with an erection and realized that, while asleep, he had taken the child's hand and pushed it against his penis. He got up and left the child's room. After his girlfriend awoke the next morning, he told her about the incident.

In July 1997, Mr. Bourne was charged with aggravated sexual battery of a minor, in violation of Code § 18.2-67.3. Pursuant to a plea agreement, he pled guilty and was convicted of the lesser misdemeanor charge of sexual battery, in violation of Code § 18.2-67.4. He complied with all of the terms of his suspended sentence and successfully completed court-ordered counseling with Dr. Jeffrey C. Fracher, a licensed clinical psychologist and certified sex-offender-treatment provider.

In 1998, following Mr. Bourne's sentencing, Dr. Fracher administered the Abel Assessment of Sexual Interest Test to Mr. Bourne. That test, Dr. Fracher explained, was designed specifically to identify sexual disorders and to measure deviant sexual interest. Based on the results of that testing, Dr. Fracher concluded that Mr. Bourne's sexual interests were "within normal limits" and that he showed no measurable sexual interest in children, male or female. Consequently, Dr. Fracher did not recommend any treatment.

Dr. Fracher saw Mr. Bourne again in May 2000 when Mrs. Bourne's former husband raised concerns in a custody proceeding about Mr. Bourne's sexual battery conviction. Dr. Fracher concluded that Mr. Bourne, who was dating Mrs. Bourne at the time, posed no risk to Mrs. Bourne's five children.

In May 2004, Dr. Fracher reevaluated Mr. Bourne in connection with the instant case. Once again, Dr. Fracher concluded that Mr. Bourne "showed no measurable deviant sexual interest" and "would pose no threat to" R.I.B. Based on the results of a test designed to "predict the likelihood of reoffending in those convicted of a prior sexual offense," Dr. Fracher concluded that Mr. Bourne

- 3 -

fell within the group of offenders who have the lowest possible likelihood of reoffending, given the fact he has a prior offense. He could only be lower if he had never offended at all. And, in fact, he gets some bonus points on that for having a clean record since 1998.

Mr. Bourne further testified at the adoption hearing that, as a result of the adoption proceedings, he learned from the Virginia State Police that he needed to register with the local sheriff as a convicted sex offender. Although he had contacted the sheriff, the registration had not yet occurred at the time of the hearing, approximately six weeks after the police notification.

After taking the Bournes' petition for adoption under advisement, the trial court gave a lengthy and detailed ruling on June 24, 2004. Initially, the court summarized the applicable law and the testimony of all of the witnesses and noted the portions of the testimony it found to be most probative. The court then reviewed the evidence as it related to each of the specific factors identified in Code § 63.2-1205 for determining whether a birth parent's consent was being withheld contrary to the child's best interests. In considering the issue of Mr. Bourne's conviction for sexual battery and his need to register as a sex offender, the trial court first noted that, after being informed by the Virginia State Police that he had to register as a sex offender, Mr. Bourne had "contacted the Sheriff's Office to complete that registration." The court then stated as follows:

> The Court also finds that the Petitioner Charles Bourne's criminal conviction for sexual battery on a minor child in 199[7] does not render this household unsuitable for the adoptive placement of [R.I.B.].
>
> Nor does it render him unsuitable or unfit to be the adoptive parent for [R.I.B.]. The Court will say that it is always concerned when a person has been charged and convicted of sexual battery, and as much or more so when the sexual battery was committed on a minor.
>
> And the Court has read very closely the exhibits . . . from Dr. Jeffrey Fracher as to the result of his testing.

And it's his testimony and report that Mr. Bourne showed no indication of any deviant sexual behavior.

And also, in his latest report, that the results of the current evaluation indicate that there are no contraindications with regard to his sexual behavior to Mr. Bourne adopting [R.I.B.].

There has been no evidence at all to refute the evidence or to contradict the evidence of Dr. Fracher that Mr. Bourne would present no future threat to [R.I.B.], and also to Dr. Fracher's testimony that there was no need for any treatment of Mr. Bourne.

And so the Court is relying on the evidence of this expert and on all the evidence as a whole that it has heard in this entire case, and on the exhibits, in deciding that Mr. Bourne does not pose a current threat to any child with regard to his sexual behavior.

Agreeing with the position taken by the child's guardian *ad litem*, the trial court concluded that clear and convincing evidence established that the withholding of consent by R.I.B.'s birth parents to the adoption was contrary to the best interests of R.I.B.

This appeal followed.[2]

## II. ANALYSIS

On appeal, Gray contends that Mr. Bourne's conviction for committing a sexual offense against a minor, requiring his registration as a sex offender for ten years pursuant to Code § 9.1-908, and his failure to timely register as a sex offender legally preclude the trial court from finding that adoption by the Bournes is in R.I.B.'s best interests. Thus, Gray concludes, the trial court erred in ruling that his withholding of consent to the adoption by the Bournes was contrary to R.I.B.'s best interests. We disagree.

The adoption of a child may be ordered without the consent of the child's birth parent if that parent's consent to the adoption is being withheld "contrary to the best interests of the child

---

[2] Teabout did not note an appeal from the trial court's findings and interlocutory order of adoption.

as set forth in Code § 63.2-1205." Code § 63.2-1203. In determining whether a birth parent's consent is being withheld contrary to the best interests of the child, the trial court "shall consider whether the failure to grant the petition pending before it would be detrimental to the child." Code § 63.2-1205. In deciding whether granting the adoption would be detrimental to the child, the trial court "must consider all relevant factors," including the following:

> the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

Id.

Here, in determining that adoption by the Bournes was in R.I.B.'s best interests and that Gray's withholding of consent to the adoption was contrary to R.I.B.'s best interests, the trial court considered all relevant factors, including Mr. Bourne's conviction for sexual battery of a minor in 1997 and his alleged delay in registering as a sex offender, as well as each of the specifically identified factors of Code § 63.2-1205. The trial court found, *inter alia*, that, although not yet registered as a sex offender, Mr. Bourne had "contacted the Sheriff's Office to complete that registration." Relying on Dr. Fracher's undisputed testimony that Mr. Bourne "showed no measurable deviant sexual interest" and "would pose no threat to" R.I.B., the trial court further found that Mr. Bourne did "not pose a current threat to any child with regard to his sexual behavior."

Gray does not challenge these factual findings on appeal. Indeed, he effectively concedes that there was no specific evidence presented in this case showing that Mr. Bourne's prior unlawful conduct placed R.I.B. in danger. Likewise, Gray makes no claim that the trial court

failed to consider all relevant factors in determining that his withholding of consent was contrary to R.I.B.'s best interests or that the trial court's determination was without evidence to support it.

Instead, Gray contends exclusively that Mr. Bourne's conviction for sexual battery and failure to timely register as a sex offender render Mr. Bourne ineligible, as a matter of law, to adopt a child. Although effectively acknowledging that "past brushes with the law" do not automatically preclude adoption by the offender generally, Gray asserts that the provision in Code § 9.1-908 requiring convicted sex offenders to register annually for ten years manifests the legislature's intention to prohibit such persons from adopting a child. Where the legislature considers an offense to be "so serious in its nature as to require the offender to be on a regulated, mandated registry," the trial court, he argues, should not be allowed to "substitute its judgment" and "undercut the legislature's actions by finding that a child's best interests can be promoted by being adopted by" such an offender, particularly when, as here, the offender has failed to timely register. To rule otherwise, Gray argues, would undermine Code § 9.1-908's purpose of "protecting the unsuspecting" citizens of the Commonwealth from convicted sex offenders.

Gray misconstrues the effect and scope of Code § 9.1-908. Code § 9.1-908 provides, in pertinent part, solely that "[a]ny person required to register [pursuant to Code § 9.1-903] or reregister [pursuant to Code § 9.1-904] shall be required to register for a period of 10 years from the date of initial registration." Plainly, the statute does not purport to address or apply to the issue of adoption. In contrast, Code § 63.2-1205 expressly mandates that the trial court consider "all relevant factors," including several specifically identified factors, in determining whether a birth parent's withholding of consent to an adoption is contrary to the child's best interests. Nothing in Code § 63.2-1205 indicates that a prospective adoptive parent's prior conviction requiring registration as a sex offender or the prospective parent's failure to timely register as a

sex offender trumps all other relevant factors and automatically precludes adoption, as a matter of law.

The legislature could have included in either of those statutes such a provision had it intended that a convicted sex offender be precluded from adopting a child, as a matter of law, but it did not. Consequently, we may not read into the relevant statutes, as Gray urges, a restriction that the legislature did not include therein, particularly where, as here, the claim at issue concerns a matter of public policy. See McManama v. Plunk, 250 Va. 27, 32, 458 S.E.2d 759, 762 (1995) (holding that provisions not found in the applicable statutes should not be added "by judicial fiat"); Barr v. Town & Country Props., Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) ("'Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied. There can be no departure from the words used where the intention is clear.'" (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944))); Infants v. Virginia Hous. Dev. Auth., 221 Va. 659, 671, 272 S.E.2d 649, 656 (1980) (holding that public policy considerations "belong exclusively in the legislative domain"). Hence, we will not extend by implication or construction Code § 9.1-908's application to a case beyond the contemplation of its terms.

We hold, therefore, that, contrary to Gray's claim, Code § 9.1-908 does not operate to preclude, as a matter of law, a convicted sex offender who is required under the statute's terms to register annually for ten years and who has not yet registered from adopting a child, and we decline Gray's invitation to impose such a prohibition by judicial fiat.

Accordingly, we affirm the trial court's judgment that Gray's withholding of consent to the adoption was contrary to his son's best interests.

Affirmed.

McClanahan, J., dissenting.

The majority's assertion that Gray makes no sufficiency of the evidence claim and instead raises only the legal ineligibility of Bourne to adopt children is incorrect and is not supported, even by Gray's question presented – "did the Court abuse its discretion in its finding that granting the adoption of the child to be known as R[.]I[.]B[.] was in that child's best interests?" The majority opinion and appellant's briefs make clear that the sufficiency question is at issue and not "effectively conceded." [3]

---

[3] The majority states in its opinion: "Here, in determining that adoption by the Bournes was in R.I.B.'s best interests and that Gray's withholding of consent to the adoption was contrary to R.I.B's best interests, the trial court considered all relevant factors, including Mr. Bourne's conviction for sexual battery of a minor in 1997 and his alleged delay in registering as a sex offender, as well as each of the specifically identified factors of Code § 63.2-1205."

The appellant states in his brief: "[Bourne's] reluctance to comply with the lawful requirement of registration coupled with the fact that the offense had been committed against an 11[-]year[-]old child should raise red flags in any trial court's considerations of [Bourne] as an adoptive father." Appellant's Opening Br. at 5; "The trial court was obviously made well aware of these discrepancies in Mr. Bourne's recounting of the facts of the offense, why he chose to agree to a guilty plea, and his unexplained delay in completing the registration requirements once he was fully aware of those requirements. When an offense is considered so serious in its nature as to require the offender to be on a regulated, mandated registry, which the Commonwealth [] does not require of someone who commits a homicide, further questions about the offender's character and judgment are raised by his changing accounts of details surrounding that offense." Appellant's Opening Br. at 6; "With this child's current custodial placement in no jeopardy, nor likely to ever be in jeopardy and given the sexual offender status of the adoptive father, it was an abuse of discretion for the trial court to rule as it did." Appellant's Opening Br. at p. 9; "[T]he Appellant's objection to the *Court's ruling that it is in this child's best interests* to grant the adoption petition necessarily includes an examination of all of the factors laid out in [] Code § 63.2-1205." Appellant's Reply Br. at 1 (emphasis added); "Mr. Bourne never, in any of his testimony, expressed any genuine remorse for or insight about his sexual offense." Appellant's Reply Br. at 2.

In addition, the parties, in their briefs, clearly use a standard of review appropriate for a sufficiency question. The guardian *ad litem* and the Bournes state: "when the trial court's decision is based . . . on an *ore tenus* hearing, it 'is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" (citing Frye v. Spotte, 4 Va. App. 530, 537, 359 S.E.2d 315, 319-20 (1987)). The guardian *ad litem* and the Bournes further state: "[I]t is well settled that the trier of fact ascertains a witness' credibility, determines the weight to be given their testimony, and has the discretion to accept or reject any of the witness' testimony." (citing Anderson v. Anderson, 29 Va. App. 673, 686, 514 S.E.2d 369, 376 (1999)).

On the question of sufficiency, an appellate court may reverse the trial court's decision only when the trial court was plainly wrong. See Frye v. Spotte, 4 Va. App. 530, 537, 359 S.E.2d 315, 319-20 (1987); see also Schweider v. Schweider, 243 Va. 245, 415 S.E.2d 135 (1992). The trial court is plainly wrong because its findings address the wrong question. The question does not involve whether there is any "current threat" or "future threat" to a child, whether the sex offender needs counseling, whether the "household [is] unsuitable for the adoptive placement," or whether Mr. Bourne is appropriate as an adoptive parent. The question is, under a clear and convincing standard, and properly animated by the policies of the General Assembly, whether a rational jurist could conclude that these findings are sufficient to determine that a birth parent's withholding consent is not in the best interests of this child. A rational jurist could not so conclude.

On the question of law, I agree with the majority's conclusion that Code §§ 9.1-908 and 63.2-1205 do not specifically operate to preclude a convicted sex offender from adopting a child. But, the notion that the legislature could have included in either of those statutes a provision that a prospective parent's prior conviction requiring registration as a sex offender or the prospective parent's failure to register as a sex offender renders that prospective parent ineligible to adopt children ascribes an inappropriate purpose to those statutes. Code § 63.2-1205 applies only to the relationship between the birth parent and the child. It does not contemplate nor address the fitness of the prospective parent. Code § 9.1-908 governs only the duration of the registration requirement. The absence of express prohibitions against registered sex offenders adopting children in Code § 63.2-1205 and Code § 9.1-908, two statutes that are irrelevant to prospective

---

The appropriate standard of review for a question of law is *de novo*. "In determining whether the trial court made an error of law, 'we review the trial court's statutory interpretations and legal conclusions *de novo*.'" Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001) (quoting Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 236 (1998)); see also Davis v. Commonwealth, 45 Va. App. 12, 14, 608 S.E.2d 482, 483 (2005).

parents, does not lead to the conclusion that the General Assembly intended that registered sex offenders are permitted to adopt children.

In fact, the intent of the General Assembly cannot be discerned by construing Code § 9.1-908 without considering the purpose of the statute. "A statute must be construed with reference to its subject matter, the object sought to be attained, *and the legislative purpose in enacting it*; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it." Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003) (citing Stanley v. Tomlin, 143 Va. 187, 195, 129 S.E. 379, 382 (1925)) (emphasis added). In this case, the trial court failed to consider the very purpose for which the "Sex Offender and Crimes Against Minors Registry" exists. Code § 9.1-900 plainly states the registry exists "to protect . . . communities and families from repeat sex offenders and *to protect children from becoming victims of criminal offenders by helping to prevent such individuals from being allowed to work directly with children*." (Emphasis added). If the General Assembly's goal is to protect communities and families and to prevent sex offenders from working directly with children, how can it be in the best interests of this child to have a non-compliant sex offender adopt the child into his own home – a sex offender who pleads guilty and is convicted of sexual battery of a minor, after admitting to taking a child's hand and pushing it against his penis to obtain an erection?

The absence of a *per se* bar in Code § 9.1-908 does not mean that the General Assembly intended that a registered sex offender be permitted to adopt a child. Such an interpretation does not impose a prohibition by judicial fiat in a statute that does not contemplate the fitness of an adoptive parent – it is a matter of judicial discretion applied to the statute that requires consideration of the best interests of a child in light of the General Assembly's policies. "The strong public policy of this Commonwealth posits that the paramount concern where children are

- 11 -

concerned [is] their best interests." <u>Commonwealth v. Johnson</u>, 7 Va. App. 614, 623, 376 S.E.2d 787, 792 (1989).  I fail to see how a birth parent's withholding consent for such an adoption can be contrary to the best interests of the child.  Code §§ 63.2-1203, 63.2-1205.  I, therefore, dissent.